**UNITED STATES of America, Appellee,**

v.

**Allan SOLOMON, Appellant.**

**No. 81–2117.**

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 11, 1982.

Decided June 15, 1982.

Barry A. Short, Thomas M. Newmark, Lewis, Rice, Tucker, Allen & Chubb, St. Louis, Mo., for appellant Allan Solomon.

Thomas E. Dittmeier, U. S. Atty., Michael W. Reap, Asst. U. S. Atty., St. Louis, Mo., for appellee.

Before LAY, Chief Judge, STEPHEN-SON * and McMILLIAN, Circuit Judges.

STEPHENSON, Circuit Judge.

Defendant Allan Solomon asks this court to dismiss an indictment entered against him for distribution of approximately two ounces of cocaine in violation of 21 U.S.C. § 841(a)(1). Solomon claims that the actions of Drug Enforcement Agency officers improperly and prejudicially abrogated his Sixth Amendment right to effective assistance of counsel. His other primary claim is that the indictment is invalid as a violation of his constitutional and statutory rights to a speedy trial.[1] We affirm the district

---

* The Honorable Roy L. Stephenson assumed senior status effective April 1, 1982.

1. The district court, the Honorable Edward L. Filippine, United States District Judge for the Eastern District of Missouri, adopted the report

court and uphold the defendant's conviction.

## I. BACKGROUND

In February 1981, defendant Solomon, Marlene Peterson and Victoriano Cabezas were under investigation by the Drug Enforcement Agency (DEA) for illegal trafficking of cocaine. DEA Special Agent Henry Pyla aided this investigation acting in an undercover capacity. On February 20, 1981, Solomon, Peterson and Cabezas were arrested in connection with cocaine transactions which allegedly occurred on February 11 and 20, 1981. This arrest was made without a warrant. There is no doubt that the evidence against Solomon was substantial. The stipulated testimony indicated that DEA undercover agents purchased cocaine from Solomon.

Prior to Solomon's arrest, Agent Pyla had indicated to agents of the Federal Bureau of Investigation that Solomon could serve as a valuable informant if he would cooperate with the authorities. After his arrest, Solomon was separated from the other two defendants and advised of his *Miranda* constitutional rights. DEA Agent Robert Zambo told Solomon that he was in serious trouble and that he should "help himself" by cooperating with the DEA. Solomon agreed to cooperate. Agent Pyla's true identity was then revealed to Solomon. Pyla advised Solomon that it was for him to decide whether to cooperate and that any cooperation Solomon could give would be brought to the attention of the United States Attorney. Solomon was told that, because he had decided to cooperate, there would be no record of his arrest and that no formal charges were then being filed. Solomon was not told, however, that in exchange for his cooperation he would not be charged or indicted. All three defendants —Solomon, Peterson and Cabezas—were then released.

Solomon began his "cooperation" the following day. He contacted Agent Pyla with information concerning two other alleged narcotics dealers. On February 24, Solomon met with Pyla, Assistant United States Attorney Dick Poehling and DEA Agent Judy McCoy. The investigative role envisaged for Solomon and potential targets were discussed.[2] After Poehling left the meeting, Solomon asked whether he should see an attorney in view of the fact that he had been arrested for alleged participation in a narcotics transaction. Pyla told Solomon that the decision to hire an attorney was Solomon's and that, if he hired an attorney, he could not deal directly with the agents, but would have to deal indirectly through his attorney and the United States Attorney's Office. From this statement both the agents and Solomon understood that, if he did hire an attorney to represent him during this investigation, it was likely that his cooperation would be limited and less fruitful because the direct relationship between him and the agents would be terminated.[3] Pyla also told Solomon that it would be necessary for the DEA to seize Solomon's Blazer vehicle because it had been used in an illegal narcotics transaction.

Shortly after this meeting, Solomon contacted an attorney named Edward McSweeney. In the process of investigating Solomon's case, McSweeney contacted the Assistant United States Attorney Poehling.

---

and recommendation of United States Magistrate David D. Noce denying the defendant's motion to dismiss the indictment. Defendant Solomon waived a jury trial and was found guilty by Judge Filippine based upon stipulated testimony. Solomon was sentenced to three years of incarceration to be followed by a three-year parole term.

2. After advising him of his constitutional rights, Poehling told Solomon at this meeting that he would have to "bite the bullet," that is, he would not escape prosecution for his involvement in the cocaine transactions of February 11 and 20. Poehling told the defendant that any aid provided by him would be brought to the attention of the district court at time of trial or sentencing. There was no express agreement that the prosecution would limit its charges against Solomon in exchange for his cooperation.

3. Solomon testified that Pyla told him "if you get an attorney, this deal is off." Pyla denied making this statement. The above description of the meeting is taken from the magistrate's report and recommendation.

Just prior to March 11, Poehling informed Agent Pyla that the defendant had retained counsel and that any future contacts with Solomon would have to go through the United States Attorney's Office to McSweeney. On March 11, either one or two days after learning that Solomon had retained counsel, Pyla seized Solomon's vehicle pursuant to 21 U.S.C. § 881.

Agent Pyla denied the implication that the vehicle was seized in retaliation for Solomon's contacting an attorney. Pyla testified that, although it could have been done as early as February 20, the delay in seizing the Blazer was because of a delay in completing the necessary paperwork and because he had just returned from a vacation.[4]

Shortly after the seizure of the vehicle, Solomon dismissed his attorney. Solomon then told Agent Pyla that he no longer had an attorney. Pyla asked Solomon, "Well, is it your intention to get on with what we have to do?" Solomon then agreed to cooperate with the DEA. This occurred about March 18.

Solomon met several times with the DEA agents and representatives of the FBI over the next month and a half. He provided information which resulted in federal prosecutions in the federal district court in Iowa. Also, at these meetings, Solomon made inculpatory statements. These statements were confessions concerning the activities of February 11 and 20. They also included an agreement to testify before the grand jury and at a subsequent trial against any accomplices or co-conspirators. Neither of these statements were used against Solomon to establish guilt but were used as mitigating factors prior to sentencing. Solomon signed a written warning and waiver of rights form with regard to both statements and was provided an opportunity to retain counsel prior to making the statements. On April 30, Solomon refused to cooperate further.

On May 5, 1981, a complaint was filed against Solomon charging him with distribution of cocaine. On May 29, he was indicted with one count of cocaine distribution. In a separate indictment filed on the same day, Solomon was charged with conspiracy to distribute, distribution and interstate travel to distribute cocaine, along with Peterson and Cabezas.

Prior to trial, Solomon moved to dismiss the indictments because of (1) governmental misconduct which interfered with his right to counsel under the Sixth Amendment, (2) the indictments breached the government's promise not to prosecute, and (3) the indictments were filed in retaliation for his failure to cooperate with the government. The magistrate took testimony over three days. The magistrate held, and the district court concurred, that the DEA agents had improperly intruded into the attorney-client relationship. The magistrate concluded that evidence concerning Solomon's introductions of undercover agents to others which led to the Iowa federal prosecutions should be suppressed as to Solomon because there was a causal connection between the constitutional violation and the gathering of this evidence.

However, because Solomon had been apprised of his rights and had been given the opportunity to obtain counsel prior to making self-incriminating statements, there was no causal connection between the violation and the defendant's statements.[5] The magistrate thus concluded that the appropriate remedy was the suppression of certain evidence, not dismissal of the indictment, citing *United States v. Morrison*, 449

4. Solomon testified that Pyla arrived at his house to seize the vehicle. Solomon asked why. Agent Pyla then said "I told you not to see an attorney. It's all over with now" according to Solomon's testimony. Agent Pyla denied making this statement. The magistrate found that Pyla had merely refused to speak with Solomon because he had retained an attorney.

5. This issue is not important on appeal because, as noted, the defendant's statements were not used against him as part of the stipulated testimony which related exclusively to events which took place prior to Solomon's initial arrest.

U.S. 361, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981). With regard to the other claims, the magistrate concluded that the record did not support a finding of prosecutorial vindictiveness or that Solomon had been promised that no indictment would issue if he cooperated.

## II. DISCUSSION

### A. *Sixth Amendment Claim*

The appellant argues that the indictment should be dismissed because of the interference by Agent Pyla and others with his Sixth Amendment right to counsel.

■ The crucial precedent in the case at bar, as noted by the magistrate, is *United States v. Morrison.* In *Morrison,* the Court held that even when the government deliberately violated the defendant's Sixth Amendment rights by questioning her without her attorney's knowledge or permission, criticizing her counsel and threatening her with a long jail term if she did not cooperate, dismissal of the indictment was not a proper remedy in the absence of demonstrable prejudice to the defendant. *United States v. Morrison, supra,* 449 U.S. at 365, 101 S.Ct. at 668.[6] The Court held that such a drastic remedy is unnecessary when the prejudice to the defendant can be remedied by a new trial or the suppression of evidence. *Id.* at n.2, 101 S.Ct. at 668 n.2. This was true even though these remedies, just as in the case at bar, would not have benefited the particular defendant. Even when the intrusion is deliberate or improperly motivated, dismissal is not warranted. The Court stated that cases involving Sixth Amendment deprivations are subject to the rule that remedies should be tailored to the

injury suffered from the constitutional violation, that is, remedies should be limited to denying the government use of the results of its intrusion. *Id.* at 364, 366, 101 S.Ct. at 667, 669.

■ In this case, the evidence used to convict Solomon was obtained prior to the constitutional violation.[7] Information gathered after the Sixth Amendment intrusion, including Solomon's inculpatory statements, was not used to support the conviction. Thus the issue is clearly framed. The defendant must show that the representation he received or the proceedings leading to the conviction were adversely affected by virtue of the Sixth Amendment violation in order to obtain a dismissal of the indictment.[8]

In order to satisfy this test, the defendant argues that he was prejudiced by being without an attorney during March and April. He claims that if he had been represented by counsel he might have obtained immunity or other favorable treatment as *quid pro quo* for his cooperation. He also argues that beyond this last opportunity to plea bargain, he ignored his own defense while attempting to aid the DEA agents. Solomon claims that the DEA agents destroyed the attorney-client relationship.

■ The *Morrison* Court did not discuss the extent of prejudice necessary for relief to be granted but simply noted that the defendant had not demonstrated transitory or permanent prejudice. *Id.* at 366, 101 S.Ct. at 669. In this case the Sixth Amendment violation had absolutely no impact on the finding of guilt. The evidence used to obtain the conviction was gathered prior to the constitutional intrusion. While we do

---

**6.** *See United States v. Crow Dog,* 532 F.2d 1182, 1196–97 (8th Cir. 1976), *cert. denied,* 430 U.S. 929, 97 S.Ct. 1547, 51 L.Ed.2d 772 (1977).

**7.** For purposes of argument, we shall assume that the government's conduct constituted a Sixth Amendment violation just as the Court in *Morrison* did. *See United States v. Morrison,* 449 U.S. 361, 364, 101 S.Ct. 665, 667, 66 L.Ed.2d 564 (1981). However, there is little doubt that the lower court's holding is correct that Solomon's Sixth Amendment rights were

violated. The only question is what is the appropriate remedy.

**8.** The *Morrison* Court implicitly placed the burden of proof on the defendant. This has been the majority position of the circuit courts. *See, e.g., United States v. Walker,* 638 F.2d 1147, 1149–50 (8th Cir. 1981) (per curiam). *See also* Project, *Eleventh Annual Review of Criminal Procedure: United States Supreme Court and Court of Appeals 1980–81,* 70 Georgetown L.J. 465, 664 n.1673 (1981).

not condone the actions of the DEA agents, we are unable to locate any prejudice to the defendant to support the extraordinary remedy of dismissal. The *Morrison* case states that the remedy must be tailored to match the scope of the constitutional intrusion. *Id.* at 364, 101 S.Ct. at 667. Our decision is that the remedy of dismissal is too drastic a result because of the lack of prejudice shown here. The appropriate remedy in this case was the suppression of evidence obtained as a result of the constitutional intrusion. The fact that this remedy was unnecessary because the prosecution had other untainted evidence sufficient to convict the defendant cannot be used to argue that dismissal is the only appropriate remedy. The prosecution should not be penalized because it has an overabundance of admissible probative evidence. *See United States v. Melvin,* 650 F.2d 641, 643–44 (5th Cir. Unit B 1981); *United States v. Killian,* 639 F.2d 206, 210–11 (5th Cir. Unit A), *cert. denied,* 451 U.S. 1021, 101 S.Ct. 3014, 69 L.Ed.2d 394 (1981); *United States v. Cross,* 638 F.2d 1375, 1379 (5th Cir. Unit A), *modified on rehearing,* 655 F.2d 50 (1981); *United States v. Boffa,* 89 F.R.D. 523, 532–33 (D.Del.1981).

However, we must also note that the conduct of the government agents in this case was highly improper. There was strong support in the record for concluding that the DEA agents had pressured the defendant to eschew the assistance of an attorney. Such activity is truly reprehensible. However, since no evidence obtained from these actions was used against the defendant, reversal is not required.

## B. *Right to Speedy Trial Claim*

Solomon asserts that his right to a speedy trial drawn from the Sixth Amendment and the Speedy Trial Act, 18 U.S.C. § 3161, *et seq.,* was violated. He claims that the indictment should be dismissed because of these violations.

The Speedy Trial Act of 1974 endeavored to minimize delay in criminal proceedings by prescribing time periods within which the various stages of a prosecution were required to be completed. These time limits were to be phased in over a four year period. The sanctions for failure to comply with the Act's time limits were not fully enforceable during this phase-in period. *See United States v. Gilliss,* 645 F.2d 1269, 1274–76 (8th Cir. 1981). *See also* Misner, *District Court Compliance with the Speedy Trial Act of 1974: The Ninth Circuit Experience,* 1977 Ariz.St.L.J. 1, 3–5 (1977). However, all the sanctions provided in the Act are effective and apply to all cases commenced by arrest or summons and all informations or indictments filed on or after July 1, 1980. 18 U.S.C. § 3163(c).[9] Thus, the sanctions provided for in the Act are fully applicable in this case.

The Act in its present form primarily concerns two time periods. The first is from arrest or service with a summons to the filing of an indictment or information. 18 U.S.C. § 3161(b). The second is from the filing of the indictment or information to the commencement of trial. 18 U.S.C. § 3161(c)(1). The case at bar concerns the pre-indictment period. Section 3161(b) provides:

> Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges. If an individual has been charged with a felony in a district in which no grand jury has been in session during such thirty-day period, the period of time for filing of the indictment shall be extended an additional thirty days.

Section 3162 states the sanctions or remedies that are to be utilized if the Act is violated. Section 3162(a)(1) provides:

> If, in the case of any individual against whom a complaint is filed charging such individual with an offense, no indictment or information is filed within the time

---

9. Section 3163(c) in conjunction with section 3174(c) provided a method to permit a district to implement the sanctions of section 3162 prior to July 1, 1980. By an administrative order dated August 4, 1980, the Judicial Council of the Eighth Circuit authorized the implementation of section 3162 for the Eastern District of Missouri, effective July 1, 1980.

limit required by section 3161(b) as extended by section 3161(h) of this chapter, such charge against that individual contained in such complaint shall be dismissed or otherwise dropped. In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice.

Solomon was arrested on February 20, 1981. On May 5, a complaint was filed against him. The indictment was filed on May 29, some seventy-four days after the initial arrest. The appellant claims that the thirty-day arrest-to-indictment time limit was thus violated.[10]

The government argues that the "informal" and warrantless arrest of February 20 did not trigger the time limit protections of section 3161(b). It argues that the Speedy Trial Act clock began to run with the filing of the complaint on May 5. It asserts that "arrest" in section 3161(b) means a formal arrest upon a judicial determination of probable cause and upon the filing of formal charges against the defendant. The government relies on *United States v. Padro*, 508 F.Supp. 184 (D.Del.1981). The May 29 indictment would then have occurred within the thirty-day limit of section 3161(b).

The appellant argues that the government's definition of arrest is too narrow. He notes that section 3161(b) does not speak of a "formal" arrest, nor does it require the filing of charges.

It is clear that remedial section 3162(a)(1) is not applicable to this case. It states, "in the case of any individual against whom *a complaint is filed charging such individual with an offense*" and where the indictment is not timely filed within the meaning of section 3161(b) *"such charge * * * contained in such complaint* shall be dismissed or otherwise dropped." Section 3162(a)(1) does not state that it is applicable to the case where there is an arrest but no complaint is filed and no charges made. The *Padro* court relies on this observation to conclude that an arrest based upon the mere opinion of a police officer is not sufficient to trigger the Act's time limits. The court stated, "[i]t is only when a charge is leveled against a defendant based upon a finding of probable cause by a judicial officer that the time limitation of section 3161(b) is relevant." *United States v. Padro, supra*, 508 F.Supp. at 185.

Section 3161(b) by its own terms refers to arrest without the qualification that formal charges need be filed. The *Padro* court is correct when it implicitly recognizes that the remedy provided in section 3162(a)(1) is not relevant to an arrest without a complaint. The statute thus has a gap in its remedial provisions. It clearly sets out the applicable provision for violation of the time limits concerning complaint to indictment or information, and indictment or information to commencement of trial. But it does not specify what the remedy shall be if section 3161(b) is violated and only an arrest has occurred and no charges have been filed.[11]

A panel of this court has recently examined this statutory scheme and concluded that "the term 'arrest' in section 3161(b) of the Act must be construed as an arrest where the person is charged with an offense." *United States v. Jones*, 676 F.2d 327 at 331 (8th Cir. 1982). The *Jones* court concluded that the protections of the Act and the Sixth Amendment right to a speedy trial are concurrent in this respect. *Id.*, at 331. *See United States v. MacDonald*, —— U.S. ——, ——–—— n.7, 102 S.Ct. 1497, 105 n.7, 71 L.Ed.2d 696 (1982). Thus, in the case at bar, the Act's thirty-day time period contained in section 3161(b) did not begin to

---

10. There is nothing in the record to indicate, or have either of the parties argued, that any of the excludable time provisions contained in section 3161(h) are applicable in this case.

11. It has been observed that the Speedy Trial Act contains "numerous unresolved policy issues, ambiguities, and drafting errors." *United States v. Mulherin*, 521 F.Supp. 824, 826 (S.D. Ga.1981) (quoting Frase, *The Speedy Trial Act of 1974*, 43 U.Chi.L.Rev. 667, 696–97 (1976)).

run until May 5, the date the complaint was filed. The indictment was filed on May 24, well within the thirty-day period.

On much the same grounds, the defendant's constitutional speedy trial claim also fails. The speedy trial clause affords no protection during a period that charges are not pending. *United States v. MacDonald, supra,* —— U.S. at ——, 102 S.Ct. at 1501; *United States v. Marion,* 404 U.S. 307, 313, 92 S.Ct. 455, 459, 30 L.Ed.2d 468 (1971).[12]

Affirmed.

12. The appellant raises two other issues besides the Sixth Amendment and speedy trial claims discussed above. Based upon our examination of the record and arguments of the parties, it is clear that the indictment should not be dismissed because it represented "governmental retaliation and vindictiveness." The district court's conclusion that it could perceive no vindictive animus is supported by the evidence. The government at all times made it clear that some charges would be forthcoming. We agree with the magistrate that the DEA was disappointed that Solomon could not provide more helpful information but this is not enough to demonstrate prosecutorial vindictiveness. *See Blackledge v. Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974); *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).

Secondly, the appellant claims that the district court should have exercised its supervisory powers to dismiss the indictment to "protect the integrity of the court and the constitutional rights of the public." We doubt whether such a holding is possible without a finding of prejudice to the defendant, as the appellant suggests. *See United States v. Drake,* 655 F.2d 1025, 1027 (10th Cir. 1981) (citing *United States v. Payner,* 447 U.S. 727, 100 S.Ct. 2439, 65 L.Ed.2d 468 (1980)). Nevertheless, we conclude that there is no showing of such a systematic and persistent abuse of power to support such a drastic remedy. *See United States v. Serubo,* 604 F.2d 807 (3d Cir. 1979).