**UNITED STATES of America, Appellee,**

v.

**Kenneth Huie DAVIS, Appellant.**

**No. 85–1397.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 14, 1985.

Decided March 3, 1986.

Q. Byrum Hurst, Jr., Hot Springs, Ark., for appellant.

Steven Snyder, Asst. U.S. Atty., Fort Smith, Ark., for appellee.

Before HEANEY, Circuit Judge, HENLEY, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

HENLEY, Senior Circuit Judge.

Kenneth Huie Davis appeals from his conviction for rape under 18 U.S.C. § 2031 for which he received a fifteen year sentence. On appeal he argues that the district court[1] erred in (1) failing to dismiss the indictment because of Speedy Trial Act and equal protection violations; (2) allowing into evidence an improper photographic lineup and the fact that there had been previous trials on the same charge; (3) transferring the trial; (4) making prejudicial comments; and (5) denying his motions for a new trial and a judgment of acquittal. He also contends that his conviction should be reversed due to his allegedly unlawful arrest. We affirm.

**BACKGROUND.**

Davis was convicted of raping Mary Cammack Hanks in Hot Springs National Park on Saturday, April 21, 1984. According to the victim's testimony the rape occurred as follows. While she was walking into Hot Springs, Arkansas late in the afternoon or early evening, appellant stopped and offered her a ride, which she accepted. He soon left the main road into town, explaining that he wished to avoid the heavy racetrack traffic.[2] When he pulled off the road and stopped Hanks told him that she had a pocketknife to which he responded that he had a gun. At this point she ran out of the truck. He chased her and there was a struggle, during which she stated she was sixteen and menstruating. Davis answered that he did not care and took her pocketknife and threw it into the woods, telling her that she "could do it [in the woods] or in the truck." Then, after pushing her into the truck and backing it up into another area where she was allowed to remove her tampon, Davis had intercourse with Hanks in his truck.

Afterward, Davis drove Hanks into Hot Springs. At approximately 8:00 o'clock that evening she reported the incident to the Garland County Sheriff's office describing Davis, his truck and his license plate number. She was examined at an emergency room and semen was found in her vaginal washings and panties.

A check of the license plate number given by Hanks revealed that the truck belonged to Davis whose home was listed as Amity, Arkansas, which is in Clark County. At the request of Garland County, the Clark County Sheriff's office took Davis into custody at 9:30 p.m. at the doorway to his residence, and transported him to Garland County. There, a photograph was taken of him and placed into a photographic display, consisting of six photographs,

---

1. The Honorable Oren Harris, United States Senior District Judge, Eastern and Western Districts of Arkansas.

2. This was "Derby Day," an active day for horseracing in Hot Springs, Arkansas.

from which Hanks identified him as her attacker. Still later semen was found in the underwear Davis was wearing when arrested.

Upon visiting the scene of the crime with Hanks the police determined that the rape took place within the boundaries of Hot Springs National Park. The Park Service was notified and shortly before midnight Ranger Mark Harvey took responsibility for Davis' detention. On Sunday, April 22, 1984, park rangers found a tampon and pocketknife near the scene of the crime. Davis was released on Monday morning.

Davis denies ever having seen or raped Hanks. He testified that he had been at the races and took a different road home than the one on which Hanks said she was raped.

Appellant was indicted by a grand jury on June 13, 1984 and was tried on October 17, 1984 in the Hot Springs Division of the United States District Court for the Western District of Arkansas. This trial ended in a mistrial due to a hung jury as did a second trial held on December 3, 1984. The third trial which was transferred to the El Dorado Division was held on February 11, 1985, and ended in a conviction.

Appellant moved for a judgment of acquittal and for a new trial, in part claiming that his right to a fair trial had been denied because the government did not disclose evidence that the victim had gonorrhea at the time of the alleged rape.

## DISCUSSION.

*(1) Speedy Trial Issue.* Appellant argues that his indictment should have been dismissed because he was arrested on April 21, 1984 and not indicted until June 13, 1984 in violation of the Speedy Trial Act, 18 U.S.C. § 3161 et seq. This act requires:

> Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges. If an individual has been charged with a felony in a district in which no grand jury has been in session during such thirty-day period, the period of time for filing of the indictment shall be extended an additional thirty days.

18 U.S.C. § 3161(b).

■ Davis' argument fails for two reasons. First, the government alleged at trial that no grand jury sat during the first thirty days after Davis' arrest, and therefore the time for filing an indictment was extended an additional thirty days. Davis offered no evidence to rebut this allegation.[3]

■ Second, Davis' arrest was not the type to start the running of the speedy trial clock. Title 18 U.S.C. § 3162(a)(1) provides for dismissal of an indictment for a speedy trial violation only "in the case of any individual against whom a complaint is filed charging such individual with an offense...." This appears to create a gap between the coverage of § 3161(b) which begins with an arrest and § 3162(a)(1) which starts with a formal charge. However, it does not cause a conflict as our court has determined that an arrest under § 3161(b) means a formal arrest, such as when a complaint, information or indictment has been filed. *United States v. Boles,* 684 F.2d 534, 535 (8th Cir.1982); *United States v. Solomon,* 679 F.2d 1246, 1252 (8th Cir.1982); *United States v. Jones,* 676 F.2d 327, 331 (8th Cir.), *cert. denied,* 459 U.S. 832, 103 S.Ct. 71, 74 L.Ed.2d 71 (1982).

Here, Davis was not brought before a magistrate, formally charged by complaint or held in custody pending the filing of formal charges. Therefore, we hold that

---

**3.** Davis alleges that under § 3162(a)(2) the government bears the burden of going forward with evidence that it was entitled to an extension of the original time limit for filing an indictment. A closer reading of § 3162(a)(2) reveals, however, that the government bears this burden for an exclusion of time under § 3161(h)(3) ("delay resulting from the absence or unavailability of the defendant or an essential witness"), and not for the exclusion for time under § 3162(a)(2) with which we are concerned here.

the district court was correct in not dismissing the indictment.

*(2) Equal Protection Issue.* Davis next argues that his indictment should be dismissed because 18 U.S.C. § 2031, as it has been defined, singles out males for punishment thereby creating an illegal classification based on sex and violating his constitutional right to equal protection under the laws.

Although in light of the gender neutral wording of § 2031,[4] a broader definition of rape at least arguably may be appropriate, rape in the federal system has been defined as "carnal knowledge of a female by force or threat of force." *United States v. Smith,* 574 F.2d 988, 990 (9th Cir.), *cert. denied,* 439 U.S. 852, 99 S.Ct. 158, 58 L.Ed.2d 156 (1978). However, this is not critical to our analysis because forcible rape statutes which are not gender neutral have been upheld as not violating equal protection rights. *See Country v. Parratt,* 684 F.2d 588, 593 (8th Cir.), *cert. denied,* 459 U.S. 1043, 103 S.Ct. 461, 74 L.Ed.2d 612 (1982); *Hall v. McKenzie,* 575 F.2d 481, 484–85 (4th Cir.1978); *Moore v. Cowan,* 560 F.2d 1298, 1303 (6th Cir.1977), *cert. denied,* 435 U.S. 929, 98 S.Ct. 1500, 55 L.Ed.2d 525 *and* 436 U.S. 960, 98 S.Ct. 3079, 57 L.Ed.2d 1127 (1978).

Generally, statutes which are not gender neutral have been upheld if the classification serves important governmental interests and the means used are substantially related to achieving those interests. *See Mississippi University for Women v. Hogan,* 458 U.S. 718, 724, 102 S.Ct. 3331, 3336, 73 L.Ed.2d 1090 (1982). Such statutes are valid "where the gender classification is not invidious, but rather reflects the fact that the sexes are not similarly situated in certain circumstances." *Michael M v. Superior Court of Sonoma County,* 450 U.S. 464, 469, 101 S.Ct. 1200, 1204, 67 L.Ed.2d 437 (1981).

Our court in *Country v. Parratt* upheld a Nebraska forcible rape statute, Neb.Rev.

Stat. § 28–408 (1964) (repealed 1977), under which only a male could be convicted for carnal knowledge of a female by force. 684 F.2d at 591. In that case, we first analyzed the Nebraska criminal code as a whole. *Id.* Since there were other code sections punishing other types of sexual assaults, we determined that the issue was whether a separate offense based on gender could be created punishing men who sexually assault women, more severely than other assailants in similar criminal contexts. *Id.*

In *Country v. Parratt,* we found that the legislative purpose "to deter men from physically and emotionally injuring women," was discernible from the statute. *Id.* at 592. We further determined that the statute's heightened sanction was substantially related to the government's purpose because a male attacker could impose a distinct type of harm on the female victim, the fear of an unwanted pregnancy and its physical, emotional, ethical and financial consequences. *Id.*

We conclude that the *Country v. Parratt* analysis applies equally well here. In analyzing the federal criminal code we find that, as in Nebraska, other types of sexual assault may be punished under other sections. *See, e.g.,* 18 U.S.C. § 113. Also, we believe a similar legislative purpose can be discerned from the statute and is likewise substantially related to the statute's sanction. Therefore, Davis' equal protection rights were not violated by any sex classification used in § 2031.

*(3) Photographic Lineup Issue.* Davis argues that it was error to admit evidence of a photographic lineup at which the victim identified him as her attacker because his arrest was unlawful and the lineup was improperly conducted.

Davis points out that under 16 U.S.C. § 1a–6 a park ranger has authority to arrest an individual without a warrant upon a reasonable belief that a crime has been

---

**4.** 18 U.S.C. § 2031 states:
Whoever, within the special maritime and territorial jurisdiction of the United States,

commits rape shall suffer death, or imprisonment for any term of years or for life.

committed, and on the condition that the arrest occurs within the system or while the individual is fleeing from it. Davis alleges that because the ranger did not arrest him within the boundaries of the park he was illegally detained and the evidence of the photographic lineup was inadmissible at trial.

Davis' argument is unpersuasive. The legality of his arrest by the park ranger is not important as the photographic display and identification took place before he was turned over to the park ranger's authority. Thus, the propriety of the identification turns on the question whether the warrantless arrest by local police was proper. Unfortunately, the parties' briefs can barely be said to raise this issue.[5] Even so, we discuss it briefly.

█ A warrantless arrest may be made in a public place on the basis of probable cause. *United States v. Watson*, 423 U.S. 411, 423–24, 96 S.Ct. 820, 827–28, 46 L.Ed.2d 598 (1976). However, a line is drawn at the home, and no person may be arrested in his home without a warrant unless both probable cause and exigent circumstances exist. *Payton v. New York*, 445 U.S. 573, 589–90, 100 S.Ct. 1371, 1381–82, 63 L.Ed.2d 639 (1980). When a person is arrested at the doorway, as was Davis, the circuits are split as to whether this constitutes a house arrest and is improper. *Compare United States v. Whitten*, 706 F.2d 1000, 1015 (9th Cir.1983) (relying on *United States v. Santana*, 427 U.S. 38, 42, 96 S.Ct. 2406, 2409, 49 L.Ed.2d 300 (1976), court found no warrant required because doorway is a public place), *cert. denied*, 465 U.S. 1100, 104 S.Ct. 1593, 80 L.Ed.2d 125 (1984), *with United States v. Morgan*, 743 F.2d 1158, 1166 (6th Cir.1984) (location of arrested person, not arresting officer, determines whether situation is a home arrest), *cert. denied*, —— U.S. ——, 105 S.Ct. 2126, 85 L.Ed.2d 490 (1985).

█ We are not willing to find on the record here that Davis' arrest was improper. We believe the facts are sufficient to show that the police had probable cause to arrest Davis. Probable cause exists when the facts and circumstances are such that a prudent person would be warranted in believing that a suspect had committed an offense. *United States v. Henry*, 763 F.2d 329, 330 (8th Cir.1985); *United States v. Bubis*, 744 F.2d 61, 64 (8th Cir.1984). Here, the victim gave a detailed description of her attacker, his vehicle and the vehicle's license plate number, which showed that the truck was registered to Davis.

The facts are also sufficient to make some showing of exigent circumstances according to the considerations set out in *Dorman v. United States*, 435 F.2d 385, 392–93 (D.C.Cir.1970) (en banc). *See also United States v. Kulcsar*, 586 F.2d 1283, 1287 (8th Cir.1978). We believe this because, here, (1) the suspect was accused of a serious crime, rape; (2) he had allegedly threatened the victim by stating that he had a gun, so he was possibly armed; (3) the evidence of probable cause was clear as we have just stated; (4) there was cause to believe evidence would be destroyed, and in fact semen was found on the underwear Davis was wearing; (5) the confrontation was peaceful and no intrusive force was used; and (6) the arrest was not made late at night, but rather at early evening and within a very short time after the alleged rape.

Moreover, there was no egregious police misconduct in the course of the arrest. Most of the cases in which a "doorway" arrest was found to be improper involved deliberate delay, *see United States v. Houle*, 603 F.2d 1297, 1300 (8th Cir.1979), coercive behavior, *see Morgan*, 743 F.2d at 1166, or deceptive practices, *see United States v. Johnson*, 626 F.2d 753, 757 (9th Cir.1980). No such condition is found here.

---

**5.** In his brief appellant states that he objected to the photographic display at trial on the basis that there was no proper foundation laid, and that it was "a violation of appellant's constitutional rights under the Fourth, Fifth and Sixth Amendments...." This is the full extent of appellant's brief which could be construed as questioning the legality of his arrest by local authorities.

■ Davis also argues that the photographic identification was inadmissible because he did not have counsel present during the presentation to the victim, a critical stage in the criminal proceedings.

This argument contains little merit as it has been held that a pre-trial photographic identification is not a critical stage at which counsel is required to be present. *United States v. Ash*, 413 U.S. 300, 321, 93 S.Ct. 2568, 2579, 37 L.Ed.2d 619 (1973); *Hill v. Wyrick*, 570 F.2d 748, 751 (8th Cir.), *cert. denied*, 436 U.S. 921, 98 S.Ct. 2272, 56 L.Ed.2d 764 (1978). For these reasons we hold that the victim's pre-trial identification of Davis was admissible.

Relatedly, Davis argues that his conviction should be reversed because his arrest and detention were illegal. He bases his claim on the allegations that (1) he was detained without a warrant or probable cause; (2) the park ranger had no authority to arrest him outside the boundaries of the National Park under 16 U.S.C. § 1a–6; and (3) Fed.R.Crim.P. 5(a) was violated because he was not taken before a federal magistrate prior to being detained.

■ Assuming that all of appellant's allegations are correct, which, of course, we do not hold,[6] his argument has no merit. It has been held time and again that an illegal arrest and detention, without more, does not void a subsequent prosecution. *United States v. Crews*, 445 U.S. 463, 474, 100 S.Ct. 1244, 1251, 63 L.Ed.2d 537 (1980); *Gerstein v. Pugh*, 420 U.S. 103, 119, 95 S.Ct. 854, 865, 43 L.Ed.2d 54 (1975).

*(4) Transfer Issue.* After the second trial in the Hot Springs Division, the district court, upon the government's motion, decided to transfer the case to the El Dorado Division. The court based this decision on (1) the two mistrials; (2) the news coverage of the case; (3) an investigation into juror misconduct in the second trial; and (4) its belief that El Dorado was the most conve-

nient neutral location which would be far enough away to obtain an impartial jury.

Appellant argues that the district court abused its discretion under Fed.R.Crim.P. 18 in making this transfer. He says that the district court did not consider (1) the limits stated in Rule 18; (2) that the transfer created a financial hardship on him; (3) that all but one of the witnesses were from Hot Springs; and (4) that Hot Springs was the scene of the crime.

■ The sixth amendment to the United States Constitution requires that a trial be held in the state and district where the crime was committed. However, a defendant does not have a right to be tried in a particular division. *See United States v. Thiel*, 619 F.2d 778, 780 (8th Cir.), *cert. denied*, 449 U.S. 856, 101 S.Ct. 152, 66 L.Ed.2d 70 (1980); *United States v. Young*, 618 F.2d 1281, 1288 (8th Cir.), *cert. denied*, 449 U.S. 844, 101 S.Ct. 126, 66 L.Ed.2d 52 (1980). A district judge has broad discretion in determining where within a district a trial will be held, and to overturn the court's decision the defendant must prove abuse of that discretion or prejudice. Fed. R.Crim.P. 18; *see United States v. Seest*, 631 F.2d 107, 110 (8th Cir.1980); *United States v. Anderson*, 626 F.2d 1358, 1375 (8th Cir.1980), *cert. denied*, 450 U.S. 912, 101 S.Ct. 1351, 67 L.Ed.2d 336 (1981).

■ Davis has not met this burden. He has claimed a financial hardship but he has not shown that he was unable to present his case; rather the witnesses at the second and third trials appear to have been virtually the same. His claims that the district court did not consider convenience to him or the prompt administration of justice are general allegations and he does not show any actual prejudice. In fact, the district court appears to have carefully and thoughtfully chosen the location of the third trial. No prejudice or abuse of discretion having been shown, we hold the

---

6. As to each of appellant's arguments: (1) we have previously shown that probable cause to arrest him existed; (2) if the ranger lacked federal authority to arrest Davis, he probably had such authority under state law, *see United*

*States v. Carter*, 523 F.2d 476, 478 (8th Cir.1975); Ark.R.Crim.P. 4.1; and (3) his detention under federal authority during Sunday in the circumstances is not shown to have been unreasonable.

transfer was properly within the district court's discretion.

*(5) Prejudicial Comments.* Appellant argues that his right to due process and a fair trial was denied by two allegedly prejudicial comments made by the district court. The first comment occurred when Davis renewed his pre-trial motions prior to trial. The trial judge stated, in chambers, that he believed Davis was trying to prevent the trial through a technicality. The court had passed upon these motions. It was not improper for counsel to preserve the record by renewing them nor for the court to adhere, rather shortly, to its earlier rulings, and that is precisely what the court did.

The second statement was made in response to Davis' motion for a judgment of acquittal at the close of the government's case. The court stated as its reason for denying the motion that "there is substantial evidence in this case to indicate the guilt of the defendant beyond a reasonable doubt, and ... that it is a case that the record requires and establishes that it should be presented to a jury." The court clarified that it had taken no position as to "what might be developed insofar as the defendant's case is concerned." Both comments were made outside the presence of the jury.

Generally, to determine if a judicial remark is prejudicial the reviewing court considers it in the context in which it was made and applies a balancing test, "to determine whether the trial judge's comments adversely affected the overall fairness of the trial." *Harris v. Lockhart,* 743 F.2d 619, 620 (8th Cir.1984). Also, since appellant did not make a timely objection as to either comment, we must review the issue under a plain error standard. *See* Fed.R.Crim.P. 52(b); *United States v. Ellis,* 747 F.2d 1205, 1208 (8th Cir.1984).

▬▬ Considering the trial court's comments in the context in which they

were made, it is difficult to find that they were prejudicial. The court's statement in denying the motion for a judgment of acquittal was merely a restatement of Fed.R. Crim.P. 29(a) and a comment on the sufficiency of the evidence for the trial to go forward. Moreover, neither statement was made in the presence of the jury, further weakening Davis' allegations of trial prejudice. *See United States v. Block,* 755 F.2d 770, 776 (11th Cir.1985). A few isolated comments such as these simply are not sufficient to show trial prejudice or plain error.

Appellant also contends that these comments showed bias and prejudice by the trial judge which prejudice was further manifested by the transfer of the case to El Dorado.[7] To be sure, any judge who has once tried a case may on a subsequent trial have some tentative view as to what the outcome may be or even should be. But we have never held that such a view per se disqualifies for bias or prejudice a judge conducting a retrial of a jury case. We have held that in order to disqualify a presiding judge a litigant must show personal bias or prejudice that stemmed from an extrajudicial source and resulted in an opinion on the merits on some basis other than what the judge learned from his participation in the case. *United States v. Hollis,* 718 F.2d 277 (8th Cir.1983). No such showing is made here.

*(6) Brady Issue.* Appellant argues that the trial court erred in denying his motion for a new trial based on the nondisclosure by the government of evidence requested by him.

Pursuant to a discovery request under Fed.R.Crim.P. 16, Davis was given a copy of the victim's medical report on July 16, 1984, approximately three months before the first trial. This report contained an entry on May 11, 1984 which stated: "[p]ositive Nissera culture during workup for an alleged assault...." "Nissera" is a

---

**7.** Appellant did not choose to file an affidavit to have the trial judge removed for bias pursuant to 28 U.S.C. §§ 144, 455. In slightly different context, we have held transfer to El Dorado was

not error and we reject out of hand the contention that bias or prejudice was involved in the transfer.

misspelling of the word "neisseria" which is a medical term for gonorrhea. The examining physician's testimony and the report were stipulated to by Davis at all three trials and the meaning of the word "nissera" was not discovered until after the third trial.

■ Appellant contends that the government hid the evidence that the victim had gonorrhea through the misspelling of its scientific name and therefore violated his right to evidence which is material to his guilt under *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963). He states that whether or not the government knew the meaning of the term is unimportant because if it did not know it should have investigated until the word's meaning was clear.

The denial of a new trial motion will generally only be disturbed on appeal when the trial court has abused its broad discretion in this matter. *Vassar v. Solem*, 763 F.2d 975, 979 (8th Cir.1985); *United States v. McMahan*, 744 F.2d 647, 652 (8th Cir. 1984).

Davis' argument falls short. We are unwilling to hold that the district court abused its discretion in denying the motion, when the information allegedly undisclosed by the government was contained in a report in the defendant's possession for three months before his first trial. *See United States v. Brown*, 562 F.2d 1144, 1151 (9th Cir.1977); *United States v. Easter*, 552 F.2d 230, 234–35 (8th Cir.), *cert. denied,* 434 U.S. 844, 98 S.Ct. 145, 54 L.Ed.2d 109 (1977); *see also United States v. Panas*, 738 F.2d 278, 284 (8th Cir.1984); *United States v. Barnes*, 634 F.2d 387, 390 (8th Cir.1980). This was not such a difficult piece of information to investigate that the resources of the United States government were a necessity. A five minute telephone call to the examining physician (whose identity was known to defendant) or a quick search of a fairly complete dictionary would have informed defense counsel of the meaning of "neisseria." This cannot be termed a case of the government failing to disclose requested information, but rather a failure of defense counsel to prepare and investigate thoroughly.[8] Indeed, it appears that counsel for neither side was aware of the nature of "neisseria" until after the third trial when the defendant's wife learned of the condition and told counsel what it was.

We find that the trial court did not err in denying the new trial motion.[9]

*(7) Evidence of Previous Trials.* Appellant argues that it was error for the trial court to admit evidence of the previous trials, and that the prosecutor intentionally elicited testimony on this subject.

Before the third trial of the case, both sides agreed that the previous trials would not be mentioned in the presence of the jury. However, on direct examination, defense witness Norman Nantze stated that he checked mileages for the defense based on "a transcript of the previous trial." Out of the presence of the jury, the court admonished counsel for both sides to inform their witnesses not to mention the first two trials. The next defense witness, Jean McGough, stated on cross-examination that she checked mileages based on her notes from "a previous trial." No objection was made to either reference to the previous trials.

If a party fails to object to the admission of evidence at the trial court level, any error is not preserved on appeal unless it is plain error. Fed.R.Crim.P. 52(b); *United States v. Udey*, 748 F.2d 1231, 1240 (8th Cir.1984), *cert. denied,* —— U.S. ——, 105

---

8. We note that appellant does not argue that this is newly discovered evidence. No doubt this is because there are no facts from which to infer diligence on his part, a requirement for granting a new trial on the basis of newly discovered evidence. *United States v. Gustafson*, 728 F.2d 1078, 1084 (8th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 380, 83 L.Ed.2d 315 (1984).

9. We so hold, however, without prejudice to Davis' right to bring a future 28 U.S.C. § 2255 action dealing with possible ineffectiveness of trial counsel, or, for that matter, to pursuit of any other post-conviction remedy, such as a motion under Fed.R.Crim.P. 35(b), lawfully available to Davis.

S.Ct. 3477, 87 L.Ed.2d 613 *and* —— U.S. ——, 105 S.Ct. 3478, 87 L.Ed.2d 613 (1985); *United States v. Poston,* 727 F.2d 734, 740 (8th Cir.), *cert. denied,* 466 U.S. 962, 104 S.Ct. 2179, 80 L.Ed.2d 561 (1984). The sort of prosecutorial error asserted here, even if plain, is reversible only when the error is so prejudicial that it affects substantial rights of the defendant resulting in a miscarriage of justice. *United States v. Segal,* 649 F.2d 599, 604 n. 10 (8th Cir.1981).

█ It is difficult to find that Davis' argument has merit since it appears that if any error occurred it is chargeable to the defense. It was defense counsel's responsibility to inform her witnesses not to discuss the previous trials, and it was on direct examination of a defense witness that the information was first mentioned. Furthermore, when the previous trials were mentioned on cross-examination of Jean McGough, the effect if anything was merely cumulative and not sufficient to cause a miscarriage of justice. *See United States v. Wagoner,* 713 F.2d 1371, 1377 (8th Cir.1983).

█ Moreover, the bald assertion that the prosecutor intentionally elicited this testimony on cross-examination is without substantial factual support. Indeed, it appears from counsel's follow-up question to McGough that he may not have anticipated the mention of the previous trials in response to his line of questioning.[10] We add only that the effect of information that there had been other trials is highly speculative at best. The information could have been harmful to the government's case (*i.e.,* it might have told the jurors that the government was having a difficult time prosecuting Davis).

We find no reversible error in admission of evidence of the previous trials.

█ *(8) Sufficiency of the Evidence.* Appellant argues that the district court erred in denying his motion for a judgment of acquittal. Davis contends that there was insufficient evidence to support his conviction because it was based on the victim's testimony which was conflicting and lacking in credibility.

In reviewing the denial of a motion for a judgment of acquittal, we must examine the evidence in a light most favorable to the government, giving it the benefit of all reasonable inferences. We will then reverse only if a reasonable jury could not have found guilt beyond a reasonable doubt. *United States v. Martin,* 706 F.2d 263, 265–66 (8th Cir.1983); *Potter v. United States,* 691 F.2d 1275, 1280–81 (8th Cir. 1982).

Although there may have been some conflicts in the victim's testimony, these conflicts and her credibility were best resolved by the jury. *Graham v. Solem,* 728 F.2d 1533, 1541 (8th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 148, 83 L.Ed.2d 86 (1984); *United States v. Snider,* 720 F.2d 985, 993 (8th Cir.1983), *cert. denied,* 465 U.S. 1107, 104 S.Ct. 1613, 80 L.Ed.2d 142 (1984). Moreover, there was sufficient other evidence to support her testimony (*e.g.,* finding the tampon and pocketknife at the scene of the crime and the semen in defendant's underwear). It is clear that the jury could have found Davis guilty of rape beyond a reasonable doubt and that the district court did not err in denying Davis' motion for a judgment of acquittal.

**CONCLUSION.**

In conclusion, we find that none of Davis' arguments on appeal provides a sufficient basis for reversal. Therefore, we affirm the conviction.

---

**10.** Q. Mrs. McGough, is it not a fact that [defense counsel] told you to go that way, to go ... that route?