UNITED STATES of America,
Plaintiff,

v.

Cesar Alejandro CONTRERAS,
Defendant.

No. CR01–4902–DEO.

United States District Court,
N.D. Iowa,
Western Division.

Feb. 28, 2002.

Shawn Stephen Wehde, Special Ass't, U.S. Attorney's Office, Sioux City, IA, for plaintiff.

Jeffrey A. Neary, Federal Public Defender, Sioux City, IA, for defendant.

## ORDER

DONALD E. O'BRIEN, Senior District Judge.

This matter comes before the Court upon defendant's motion to dismiss (docket # 10). After careful consideration of the parties' written and oral arguments, as well as the relevant case law, defendant's motion to dismiss is sustained.

## I. BACKGROUND

The defendant was arrested without a warrant on September 24, 2001 by Tri–

State Drug Task Force officers and detained in the Woodbury County Jail for a period of thirty-five (35) days before he was brought before a federal magistrate judge for an initial appearance. The defendant was indicted thirty-one (31) days after his arrest on one count of conspiracy to possess and distribute methamphetamine within 1000 feet of the real property comprising a public elementary school, in violation of Title 21, U.S.C. §§ 841(a)(1), 841(b)(1)(B), 846 and 860(a). The defendant filed a motion to dismiss the indictment with prejudice, pursuant to Federal Rule of Civil Procedure 12(b). Since then, the government has filed a new indictment against the defendant charging him with illegal re-entry in violation of Title 8 U.S.C. §§ 1326(a) and (b).

The following chronology provides an overview of the relevant dates and actions which are pertinent to this case:

| | |
|---|---|
| **September 24, 2001 (day 1)** | Defendant arrested by an officer with the Tri–State Drug Task Force and taken to Woodbury County Jail and booked. |
| | US Marshal hold[1] was placed on defendant. No state or federal charges were filed at time of arrest. |
| | INS hold placed on defendant. |
| | Defendant was not arrested on a warrant issued by state or federal court. |
| **October 24, 2001 (day 30)** | Expiration of 30 days for filing indictment pursuant to 18 U.S.C. § 3161(b). |
| **October 25, 2001 (day 31)** | Indictment issued by Grand Jury[2]. |
| **October 29, 2001 (day 35)** | US Marshal's office notified of defendant's arrest. Defendant taken to court for initial appearance before U.S. Magistrate Judge Paul A. Zoss. |
| | Counsel appointed to represent defendant. |
| **November 13, 2001** | Motion to dismiss filed by defendant. |
| **November 29, 2001** | Hearing held on motion to dismiss—hearing continued due to unavailability of government witnesses |
| **December, 2001** | Plea negotiations underway, plea hearing set for January 4, 2002 and later, at the request of the parties, rescheduled for January 11, 2002. |
| **January 10, 2002** | Plea hearing called off at the request of defendant's attorney. |
| **January 23, 2002** | Government files new indictment against defendant charging him with illegal re-entry. |
| **February 1, 2002** | Continuation of hearing on motion to dismiss—Tri–State Drug Task Force officer and Deputy U.S. Marshal testify—not able to conclude the hearing as a government witness was not available. |
| **February 8, 2002** | Continuation of hearing on motion to dismiss—INS agent testifies. |
| | Both sides rest. |

## II. ARGUMENTS & ANALYSIS

■ The thrust of defendant's motion to dismiss is that there was unnecessary excessive delay, in violation of Federal Rule of Criminal Procedure 5(a), between the time he was arrested and detained and the time he was brought to court for an initial appearance. Federal Rule of Criminal Procedure 5(a) provides in pertinent part that:

> [A]n officer making an arrest under a warrant issued upon a complaint or any person making an arrest without a warrant shall take the arrested person without *unnecessary delay* before the nearest available federal magistrate judge or, if a federal magistrate judge is not reasonably available, before a state or local judicial officer authorized by 18 U.S.C. § 3041.

Fed.R.Crim.P. 5(a) (emphasis added).

The defendant also argues that his Fourth Amendment right to protection

---

**1.** This hold does not notify the U.S. Marshals that a person is being held. It is used only by the jail to identify who will pay the bill for housing the person.

**2.** Grand Jury was in session from October 23–25, 2001.

against unfounded invasions of liberty and privacy were violated because no probable cause determination was made until the grand jury indicted him on October 25, 2001, 31 days after he was arrested and detained.

The defendant cites to the court case of *County of Riverside v. McLaughlin,* 500 U.S. 44, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991) where the United States Supreme Court discussed *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), which requires that persons arrested without a warrant promptly be brought before a magistrate judge for a probable cause determination. The *Riverside* Court held that under the Fourth Amendment, "a jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest, will, as a general matter, comply with the promptness requirement of *Gerstein.*" *Riverside,* 500 U.S. at 56, 111 S.Ct. 1661.

■ In this case, the defendant did not have an initial appearance before a magistrate judge until thirty-five (35) days after he was arrested and detained—well over the forty-eight (48) hour limit set out in *Riverside.* Further, *Riverside* states that when an arrested individual does not receive a probable cause determination with forty-eight (48) hours, the burden shifts to the government to demonstrate the existence of a bona fide emergency or other extraordinary circumstance. *Riverside,* 500 U.S. at 56–57, 111 S.Ct. 1661.

The defendant also argues that his Sixth Amendment right to a speedy trial was violated because he was not indicted within the thirty (30) day period pursuant to 18 U.S.C. § 3161(b). Title 18 U.S.C. § 3161(b) states:

Any information or indictment charging an individual with the commission of an offense shall be filed within *thirty days* from the date on which such individual was arrested or served with a summons

in connection with such charges. If an individual has been charged with a felony in a district court in which no grand jury has been in session during such thirty-day period, the period of time for filing of the indictment shall be extended an additional thirty days.

18 U.S.C. § 3161(b) (emphasis added).

Here, as mentioned, the defendant was not indicted until thirty-one (31) days after his arrest.

The Eighth Circuit, however, has held that the thirty (30) day clock starts to run on the day a complaint is filed. *See United States v. Solomon,* 679 F.2d 1246, 1252–53 (8th Cir.1982). In *Solomon,* the Eighth Circuit refused to dismiss an indictment filed seventy-four (74) days after an arrest because Title 18 U.S.C. § 3162 does not specify what the remedy should be when § 3161(b) is violated and only an arrest has occurred but no complaint has been filed. The *Solomon* court concluded that the term "arrest" in § 3161(b) "must be construed as an arrest where the person is charged with an offense." *Id.* at 1252. The defendant here, who was arrested without a complaint, argues that he was "arrested" for purposes of the Speedy Trial Act and was in "legal limbo"—he was arrested and detained for thirty-one (31) days without any charges filed or pending in either state or federal court. The defendant cites to *United States v. Osunde,* 638 F.Supp. 171 (N.D.Ca.1986) where the defendant was held in federal custody for 106 days after his arrest before a complaint was filed against him and he was brought before a judge. The indictment against Osunde was not handed down until 118 days after his arrest. In discussing *United States v. Solomon,* 679 F.2d 1246 (8th Cir.1982), the *Osunde* court concluded that

[t]he important factual distinction between the *Solomon* matter and the case

at bar is that Solomon was immediately released after his arrest. To the extent it is asserted that a proper interpretation of the term "arrest," as contemplated under the Speedy Trial Act, would condone *continuous detention* without charge, this Court declines and refuses to make such an illogical inference. It is the restraint on individual liberty not merely procedural stagnation following the filing of formal charges which Congress intended to protect against when it passed the Act.

*Osunde,* 638 F.Supp. at 174.

This Court also declines and refuses to conclude that a prisoner can be held for more than thirty (30) days and have the rule be that there is no violation of his rights because "we never filed any charges."

The government argues that although there may have been a delay in bringing the defendant before a magistrate judge for an initial appearance, the indictment should not be dismissed with prejudice because the defendant was under an INS hold during this time. The defendant admitted early on, to an INS agent, that he was in the United States illegally, he gave up his right to an INS hearing, and acknowledged he would be held in detention until his deportation. *See* government's exhibits A, B, C, and D. At the hearing held before this court, the government called as a witness Dail Fellin, an officer with the Tri–State Drug Task Force, who was involved in the investigation and arrest of the defendant. He testified that at sometime after the defendant's arrest he became aware that an INS hold was placed on the defendant but he did not know exactly when that happened. He

further testified that it was not until a week after the defendant was arrested that he noticed the defendant was still sitting in the Woodbury County Jail and he contacted the U.S. Attorney's Office and made them aware of this defendant's presence at the county jail.

The government also called INS Agent Brian Nelson who testified that he had done an investigation of defendant's "A" file[3]. Agent Nelson was unable to remember when he exactly received defendant's "A" file but he did recall that he did not process the defendant or request a fingerprint comparison on him until October 25, 2001, thirty-one (31) days after defendant's arrest. Therefore, it was not until October 26, 2001 that INS became aware of defendant's prior convictions, making it possible for INS to have pertinent evidence to submit to the U.S. Attorney's Office so that the defendant could be indicted for illegal re-entry.

Agent Nelson also explained that an "INS hold" (which was placed on the defendant sometime after his arrest when he admitted to being in the country illegally) means that the defendant was deportable at that time. Therefore, the defendant argues that because INS did not become aware of defendant's prior convictions until October 25, 2001, it is conceivable that the defendant could have been deported back to Mexico between the period of September 24 and October 25, 2001. Further, Agent Nelson explained that a marshal's hold is different from an INS hold—a person arrested by a drug task force officer and placed under a U.S. Marshal hold is not in the same status as a person held under an INS hold. Remember, in this

---

**3.** Defendant's "A" file (Alien File) was created when he initially applied with U.S. Immigration for legal immigration status and was granted legal resident status. Convictions in Oklahoma for knowingly withholding stolen property and distribution of marijuana caused him to be deported on November 23, 1999. He is now considered an "aggravated felon" because of his re-entering the United States after being deported for those crimes.

case the U.S. Marshals never knew about this defendant being in jail or being under a U.S. Marshal hold until the Woodbury County Sheriff's Office called Deputy Marshal Duane Walhof about twenty-one (21) days after the defendant's arrest. The deputy sheriff told Duane Walhof that there was no hold of any kind on the defendant except the U.S. Marshal hold, which as explained earlier, is used only for billing purposes and does not even notify the marshals that a person is being held.

The sum total of the testimony of Dail Fellin, Brian Nelson and Deputy Marshal Duane Walhof was that none of them, individually or collectively, had any evidence to demonstrate the existence of a bona fide emergency or other extraordinary circumstance as required by the *Riverside* at 56–57, 111 S.Ct. 1661.

The defendant may have been under an INS hold, however, he could have been deported to Mexico during this long delay and he would not now be facing the current drug charge. This fact however, has not been considered crucial in this Court's review of this case.

■ As mentioned earlier, in the *Riverside* case, the court ruled that where an arrested individual does not receive a probable cause determination within forty-eight (48) hours, the burden shifts to the government to demonstrate the existence of a bona fide emergency or other extraordinary circumstance. *Riverside*, 500 U.S. at 56–57, 111 S.Ct. 1661. The Government has not given this Court a plausible explanation, let alone a bona fide emergency, as to why the defendant did not appear before a magistrate judge for an initial appearance without unreasonable delay. Further, the indictment against the defendant was not filed within the thirty (30) day deadline as prescribed by the Speedy Trial Act, 18 U.S.C. §§ 3161–3174.

As in the *Osunde* case, the defendant here was held in custody from the time he was arrested until the time of his initial appearance thirty-five (35) days later. Therefore, this case is distinguishable from *United States v. Solomon,* 679 F.2d 1246 (8th Cir.1982). A violation of the Speedy Trial deadline results in mandatory dismissal of the charges. 18 U.S.C. § 3162(a)(1), *United States v. Miller,* 23 F.3d 194, 196 (1994). The government has not called to our attention any case that would allow us to ignore this mandate.

The government did cite the case of *United States v. Davis,* 785 F.2d 610 (8th Cir.1986), but that case is easily distinguishable. Davis was accused of rape and taken into custody by Sheriff's deputies. Upon investigation it was determined that the rape took place within the boundaries of a national park. The Sheriff turned the defendant over to a park ranger. The defendant was released from custody within forty-eight hours. About fifty-three (53) days later, while still not in custody, the defendant was indicted.

The *Davis* court states as follows:

Here, Davis was *not* brought before a magistrate, formally charged by a complaint *or held in custody* pending the filing of formal charges. Therefore, we hold that the district court was correct in not dismissing the indictment.

*Davis,* 785 F.2d at 613–614 (emphasis added).

Contreras, of course, was never released. He was in custody until the date of the indictment. The *Davis* case does not apply here.

Further, the government's failure to indict the defendant within thirty (30) days of his arrest does not fall under any of the exceptions set out in 18 U.S.C. § 3161(h).

■ The Speedy Trial Act also states that in determining whether to dismiss the case with or without prejudice,

the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a re-prosecution on the administration of this chapter and on the administration of justice.

18 U.S.C. § 3162(a)(1).

The Court has considered each of these factors and is persuaded that while the offense charged is serious, the facts and circumstances set out herein are clear. Whether it was the INS, the Woodbury County Jailers, the U.S. Marshals, the Drug Task Force officers or the U.S. Attorney's Office, individually and collectively, they clearly missed a deadline. As mentioned, Judge Gibson in the *Miller* case, ruled that missing such a deadline required a mandatory dismissal. The Court is further persuaded that the impact on the re-prosecution, or lack thereof, will have little effect on the administration of justice. The indictment should be dismissed with prejudice.

**IT IS THEREFORE HEREBY ORDERED** that defendant's motion to dismiss is sustained and the indictment against the defendant (Case No. 01CR4092) is dismissed with prejudice.

**IT IS SO ORDERED.**