869 F.2d 1100
 Kenneth DUNCAN, Appellee,
v.
Clyde STORIE, Individually and in his official capacity as a
County Sheriff, Thurston County, Nebraska; and Daniel
Whitted, individually and in his official capacity as a
Deputy County Sheriff, Appellants.
 No. 87-2369.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 13, 1988.
Decided March 13, 1989.
Rehearing and Rehearing En Banc Denied April 18, 1989.
 
 Larry E. Welch, Omaha, Neb., for appellants.
 Rollin R. Bailey, Lincoln, Neb., for appellee.
 Before LAY, Chief Judge, BROWN,* Senior Circuit Judge, and WOLLMAN, Circuit Judge.
 LAY, Chief Judge.
 
 
 1
 This suit arises under 42 U.S.C. Sec. 1983. It comes here on an interlocutory appeal from a denial of summary judgment by the district court.[1] See Mitchell v. Forsyth, 472 U.S. 511, 524-530, 105 S.Ct. 2806, 2814-17, 86 L.Ed.2d 411 (1985).
 
 
 2
 At the time the events in issue took place, Kenneth Duncan was the Chief of Police and Captain of the Volunteer Rescue Squad in Emerson, Nebraska and Clyde Storie was Sheriff of Thurston County. For some time prior to December 23, 1985, there had been an ongoing dispute between Duncan and Storie, whose jurisdictions overlap geographically, regarding the proper procedure for transporting bodies of deceased persons from the scene of the death. Storie required rescue squad personnel to inform his office prior to transporting these bodies to enable his staff to conduct an investigation into possible foul play.
 
 
 3
 On December 23, 1985, Duncan ordered the removal of a deceased person from a residence in Emerson before informing the Thurston County Sheriff's Office. A few days later, on December 26, Duncan and Storie had a telephone conversation concerning this matter. During this conversation, Storie, who was disturbed by Duncan's failure to notify his office, threatened to revoke the town's permit to have a red light on its rescue vehicle. Storie called Duncan an "asshole." Duncan responded by calling Storie a "fucking asshole" and threatened to haul his "fucking shrimp ass in[to] court."
 
 
 4
 Later on the same day as the phone call, Storie and Daniel Whitted, a Thurston County Deputy Sheriff, drove to Duncan's home. Duncan observed their arrival and, believing that they had come to pick up his written report on the transportation of the dead body, opened the front door to meet them. According to Storie and Whitted, when Duncan realized that they were there with regard to the alleged intimidating phone call, he stepped outside onto the porch and began to argue with them. At that time Storie decided to place Duncan under arrest for making an obscene phone call and a wrestling match ensued. Whitted applied a stun gun to Duncan which enabled the officers to handcuff him and transport him to the Sheriff's office.
 
 
 5
 Duncan contends that he had remained inside his front door when the officers arrived.[2] He attempted to close the door as soon as he ascertained that they had come to arrest him for making an intimidating phone call. The officers, however, prevented him from doing so and pulled him out of his home. Duncan was then wrestled to the ground where he received repeated applications of the stun gun before being handcuffed and placed in the squad car.
 
 
 6
 Duncan filed an action against the officers under section 1983 in federal district court alleging unlawful arrest and excessive use of force. The district court denied defendants' motion for summary judgment. The court stated that a ruling on the availability of qualified immunity would be premature until factual findings were made regarding the circumstances surrounding the arrest.
 
 Legality of the Arrest
 
 7
 Depending upon whether Duncan was arrested in his home or outside in a public place, different standards apply to evaluate the constitutionality of this warrantless arrest. If an individual voluntarily left the confines of his home, as Storie and Whitted claim that Duncan did, then the arrest was made in a public place. United States v. Santana, 427 U.S. 38, 42, 96 S.Ct. 2406, 2409, 49 L.Ed.2d 300 (1976). Under these circumstances, the individual has no expectations of privacy and the arresting officers need only demonstrate that there was probable cause in order to justify a warrantless arrest. United States v. Watson, 423 U.S. 411, 423-24, 96 S.Ct. 820, 827-28, 46 L.Ed.2d 598, reh'g denied, 424 U.S. 979, 96 S.Ct. 1488, 47 L.Ed.2d 750 (1976). However, a warrantless arrest that occurs inside an individual's home is unconstitutional unless the officers demonstrate the existence of probable cause and exigent circumstances.[3]
 
 
 8
 The doorway of an individual's home or apartment or hotel room may be a public place for the purpose of making a warrantless arrest if the individual has come to stand in the doorway voluntarily. See United States v. Whitten, 706 F.2d 1000, 1015 (9th Cir.1983). However, an individual who is compelled to stand in a doorway cannot be lawfully arrested without the existence of probable cause and exigent circumstances. See United States v. Al-Azzawy, 784 F.2d 890, 893 (9th Cir.1986); United States v. Morgan, 743 F.2d 1158, 1166 (6th Cir.1984). The same standard applies when officers deceive an individual in order to bring him to the door. United States v. Johnson, 626 F.2d 753, 757 (9th Cir.1980), aff'd on other grounds, 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982).[4]
 
 
 9
 It is well established that a warrantless arrest within the confines of the home, barring exigent circumstances, is unconstitutional. The defendants concede the absence of exigent circumstances in this case, but urge that under the Santana decision an officer might reasonably believe that Duncan's appearance at the door constituted entrance into a public place. They argue that the cases are in conflict as to when the doorway of a home constitutes a public place, and that this conflict provides objective reasonableness for failing to comprehend any constitutional violation in this case. Thus, the defendants contend that they should be entitled to qualified immunity. We disagree.
 
 
 10
 In Santana, the Supreme Court took particular care to point out that the individual who was arrested was "standing directly in the doorway--one step forward would have put her outside, one step backward would have put her in the vestibule of her residence." 427 U.S. at 40 n. 1, 96 S.Ct. at 2408 n. 1. We think it unwise to become preoccupied with the exact location of the individual in relation to the doorway. Cf. United States v. Carrion, 809 F.2d 1120, 1128 n. 9 (5th Cir.1987). As the case law discussed previously illustrates, the crucial issues involve the individual's reasonable expectation of privacy and whether that individual came to the doorway voluntarily.[5]
 
 
 11
 The existence of genuine issues of material fact is evident in this case. The parties dispute whether the arrest occurred in a public place. Storie and Whitted contend that Duncan stepped out on the porch voluntarily. Duncan, however, asserts that he had simply opened the door and remained in the home. Storie then requested him to come outside. Duncan refused to accede to this request. Duncan had answered the door for the sole purpose of handing the report out to the officers. When it was apparent that the officers were not there for the report, Duncan stepped farther back into the house and attempted to close the door. It was at that time that Duncan claims he was pulled from his home by the officers. A jury could find that Duncan's attempt to retreat, much like the suspect's retreat in Santana, placed him firmly inside his home and the officers would be required to demonstrate exigent circumstances.[6] Under Duncan's version, which we must credit for the purpose of reviewing the denial of summary judgment, Storie and Whitted did not announce their intention to arrest Duncan until he was pulled out of his home.[7] Under this version it would be impossible to hold as a matter of law that he voluntarily placed himself in a public place and willingly relinquished the expectation of privacy that he is entitled to when he is within his home. Duncan's version of the arrest asserts violations of clearly established constitutional rights and it would be improper to grant summary judgment before the finder of fact has determined these issues.
 
 Excessive Use of Force
 
 12
 "A plaintiff may recover for excessive use of force [used in effecting an arrest] under Sec. 1983 if the degree of force used was unreasonable under the circumstances, or if the force was used for an improper purpose." Patzner v. Burkett, 779 F.2d 1363, 1371 (8th Cir.1985).[8] The alleged use of excessive force is generally an issue of fact. Id. In this case, Duncan alleges that he was savagely beaten and that the officers tortured him with repeated applications of a stun gun. He asserts that these actions were in excess of the force required to make the arrest. The officers, of course, deny these allegations and maintain that they used only that force necessary to subdue Duncan, who resisted their efforts, and place him in the police car. The existence of a genuine issue of material fact is made apparent by these two very different versions of the arrest. The alleged use of excessive force is therefore a proper issue for the trier of fact to determine.
 
 
 13
 The judgment of the district court in denying the defendants' motion for summary judgment is affirmed.
 
 
 
 *
 The HONORABLE JOHN R. BROWN, Senior Circuit Judge for the United States Court of Appeals for the Fifth Circuit, sitting by designation
 
 
 [1]
 The Honorable Warren K. Urbom, United States District Judge for the District of Nebraska
 
 
 [2]
 Duncan's deposition provides the following description of the arrest:
 I said, here's the report, Clyde. And he said, that's not what I'm here for. Come outside. And I said, no, I'm not going to come outside. I've told you before and I'm not arguing with you about this. I'll see you in court.
 If that's the way you want it, I'll see you in court, and I handed the report out to him. He started to pull the door opened. And when he pulled on the door, I reached for the door, he grabbed my left hand, the Deputy grabbed my right arm, pulled me outside the house onto the porch and started to wrestle me to the ground.
 When they were wrestling me to the ground, I felt that there was probably going to be more than just an arrest or whatever here because they said as they were pulling me out, Clyde said, we're going to--I'm going arrest you for making an intimidating phone call.
 Duncan Dep. at 40, lines 11-25.
 
 
 [3]
 In determining whether exigent circumstances exist, the following criteria are considered: (1) seriousness of the alleged offense; (2) reasonable belief that the suspect is armed; (3) clear showing of probable cause to believe that the suspect committed the alleged offense; (4) strong reason to believe that the suspect is on the premises; (5) likelihood that the suspect will escape if not swiftly apprehended; and (6) entry may be made peaceably. United States v. Kulcsar, 586 F.2d 1283, 1287 (8th Cir.1978)
 
 
 [4]
 In addition to the existence of probable cause and exigent circumstances, this court has examined the record for egregious police misconduct when evaluating the propriety of a doorway arrest. United States v. Davis, 785 F.2d 610, 615 (8th Cir.1986)
 
 
 [5]
 In Santana, for example, the suspect was not summoned to the door. In fact, she was already standing in the open doorway of her home when the police arrived and identified themselves. 427 U.S. at 40, 96 S.Ct. at 2408. It was at that time that she retreated to the vestibule. Id. The Court found that the doorway was a public place under these circumstances. Id. at 42, 96 S.Ct. at 2409. It was, however, the existence of exigent circumstances--"a true 'hot pursuit' "--that permitted the officers to pursue the suspect inside her house. Id. at 42-43 & n. 3, 96 S.Ct. at 2409-10 & n. 3 (citing Warden v. Hayden, 387 U.S. 294, 298, 87 S.Ct. 1642, 1645, 18 L.Ed.2d 782 (1967) and Johnson v. United States, 333 U.S. 10, 16 n. 7, 68 S.Ct. 367, 370 n. 7, 92 L.Ed. 436 (1948)). See also United States v. Martinez-Gonzalez, 686 F.2d 93, 101 (2d Cir.1982)
 
 
 [6]
 If this were the case, the officers have already conceded liability: "If this case turns upon the issue of the presence of exigent circumstance, Appellants lose." Appellant's reply brief at 3. Indeed, "it is difficult to conceive of a warrantless home arrest that would not be unreasonable under the Fourth Amendment when the underlying offense is extremely minor." Welsh v. Wisconsin, 466 U.S. 740, 753, 104 S.Ct. 2091, 2099, 80 L.Ed.2d 732 (1984)
 
 
 [7]
 In fact, Storie and Whitted concede they did not decide to make the arrest until after Duncan was outside the house and allegedly became uncooperative and abusive. See Storie Dep. at 15, lines 3-13, and Whitted Dep. at 31, lines 6-12
 
 
 [8]
 In determining whether the use of force was reasonable and properly motivated, the court must consider "the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Id. (quoting Putman v. Gerloff, 639 F.2d 415, 423 (8th Cir.1981))