**Charles K. ELDER and Beverly S. Elder, husband and wife, Plaintiffs,**

v.

**R.D. HOLLOWAY, and Other Unknown Employees and Agents, individually, and in their official capacity as police officers for the Ada County Sheriff's Office; Vaughn Killeen, as Sheriff of Ada County; and the County of Ada, Defendants.**

**Civ. No. 88–1329.**

United States District Court, D. Idaho.

Nov. 21, 1990.

John C. Lynn, Lynn, Scott, Hackney & Jackson, Boise, Idaho, for plaintiffs.

James J. Davis, Stan J. Tharp, Eberle, Berlin, Kading, Turnbow & McKlveen, Chartered, Boise, Idaho, for defendants.

## MEMORANDUM OPINION AND ORDER

RYAN, Chief Judge.

## I. FACTS AND PROCEDURE

This suit arises out of the arrest and seizure of the plaintiff, Charles Elder, on April 27, 1987. The defendants in this action are Lieutenant R.D. Holloway, the officer in charge of the arrest, Ada County Sheriff Vaughn Killeen, who was present during the arrest, the County of Ada, and other unknown employees and/or agents. After receiving certified copies of two Florida arrest warrants for the arrest of Mr. Elder, Defendant Holloway made arrangements to arrest Mr. Elder in a public place, his place of work. However, before Mr. Holloway could arrest Mr. Elder at his place of work, Mr. Elder and his brother William Elder, who also worked at the same place, got word of the officer's intent, and left work early. Lt. Holloway and other officers, after finding out that the Elders had left work, proceeded to William Elder's residence, which was where Charles Elder was also residing at the time. The officers, once they arrived in the area, set up surveillance of the residence. They observed the Elder brothers loading what appeared to be camping equipment into a pickup. William Elder then was seen riding away from the home on horseback. The officers detained William, and confirmed with William that his brother was still in the house. William also told the officers that his brother had access to several firearms in the home. The officers then attempted to make telephone contact with Charles, but were unsuccessful until William used the police loudspeaker to convince Charles to answer the phone. By this time, other officers had arrived near the area and had blocked off the roads coming into the neighborhood. During the telephone conversation between Charles and William, the officers were advised that Charles had fallen inside the house after he suffered an epileptic seizure. During this conversation, Plaintiff Elder suffered another seizure. After he had recovered from this second seizure, Lt. Holloway began speaking on the phone with Charles. Lt. Holloway advised Charles that if he could not walk out of the house, then he should crawl out. After a few minutes, Charles did walk out of the residence. However, upon exiting the house, he took one step, turned slightly, and fell face

down, hitting his head on the concrete walk which caused severe injuries. Emergency medical technicians were then called, and they arrived, treated Mr. Elder and transported him to the hospital.

Plaintiffs, Mr. Elder and his alleged common law wife, filed this suit on September 30, 1988. Three of the counts in the complaint pertain to alleged violations of 42 U.S.C. § 1983, and two counts deal with common law tort claims. Plaintiffs claim that the arrest was a violation of Mr. Elder's constitutional rights which require that the defendants have a valid Idaho arrest warrant before seizing him in his home.

On June 1, 1989, the plaintiffs moved for partial summary judgment on Count One as against Lt. Holloway on the issue of liability. On July 6, 1989, the defendants filed their memorandum in opposition to this motion. The defendants, on August 30, 1990, filed their Motion for Summary Judgment. On October 19, 1990, the plaintiffs filed their memorandum in opposition to this motion, and on October 29, 1990, the defendants filed their reply brief.

On November 6, 1990, this court held a hearing on all pending motions to address the cross-motions for summary judgment. Having thoroughly reviewed the statements of counsel, along with the memoranda, affidavits, and exhibits in the record, and based upon the analysis to follow, the court has determined that defendants' Motion for Summary Judgment should be granted.

## II. ANALYSIS

### A. *Summary of Cross–Motions*

1. Plaintiffs' Motion for Partial Summary Judgment.

In this motion, plaintiffs seek summary judgment against Defendant Holloway on Count One as to his liability only. Count One is a claim against Lt. Holloway and his subordinates for the unreasonable seizure of Mr. Elder, which in turn resulted in Mr. Elder sustaining severe brain damage by his fall. Plaintiffs argue that without a valid Idaho arrest warrant, the defendants could not arrest Mr. Elder in his brother's home, unless there were exigent circumstances for a warrantless arrest. This is clearly the law, and the defendants do not dispute this. *State v. Bradley*, 106 Idaho 358, 679 P.2d 635 (1983) (where the court held that the officers cannot make a warrantless nonconsensual entry in the home of the suspect to arrest him, without exigent circumstances); *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980).

Plaintiffs argue that for all practical purposes, the arrest occurred in the home because Mr. Elder was restrained in the home, once the defendants "constructively crossed" the threshold of the home by surrounding the home and requesting by police loudspeaker and telephone that Mr. Elder come out. Memorandum in Support of Motion for Partial Summary Judgment, filed June 1, 1989, at 5–6. In support of this argument, the plaintiffs point to the following "undisputed facts": (1) several armed officers surrounded the house; (2) roadblocks were established in the area of the residence; (3) plaintiff's brother William was detained and prevented from returning to his home; (4) Lt. Holloway did intend to arrest Charles Elder; and (5) a police loudspeaker and telephone were utilized to communicate with Mr. Elder that he should surrender. *Id.* at 7.

2. Defendant's Motion for Summary Judgment.

Initially, the defendant sets forth the prima facie case for establishing a 42 U.S.C. § 1983 claim. Simply stated, the plaintiffs must prove: (1) that the conduct complained of was committed by a person under the color of state law, and (2) that the conduct deprived the plaintiff of a constitutional right. *Rinker v. County of Napa*, 831 F.2d 829, 831 (9th Cir.1987). There is no dispute as to the first element. However, the defendants argue that none of plaintiff's constitutional rights were violated.

Defendants' arguments can be summarized as follows.

(a) *The arrest conducted outside the home was valid even without a valid Idaho arrest warrant.* The defendants note that the plaintiffs argue that even though Idaho statutory law [1] can be interpreted as allowing an arrest without a warrant, the case law clearly requires that the officers have a valid Idaho arrest warrant to arrest an individual in his home. The defendants do not clearly dispute this; they simply attempt to distinguish *Bradley* and *Payton,* and argue that the arrest was made outside the home. Memorandum in Support of Motion for Summary Judgment, filed August 30, 1990, at 8–10.

(b) *If the court finds that this was a constructive entry, then the arrest was still valid because there existed probable cause (based on the information received and the existence of the Florida warrants) and Mr. Elder was in plain view.* *Id.* at 10–11. However, the court finds that this argument clearly does not take into consideration the courts' findings in *Bradley, Payton,* and *United States v. Santana,* 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976).

(c) *Exigent circumstances existed that would excuse the arrest warrant requirement.* Citing a variety of authorities, defendants set forth several factors which justify a finding of exigent circumstances in this case: (1) suspect believed to be wanted for crime of violence, (Elder was wanted for aggravated battery) *United States v. Salvador,* 740 F.2d 752 (9th Cir. 1984); (2) suspect believed to be armed (several individuals informed the officers that Elder possessed and had access to guns, and in addition, sources had stated that Elder told them that he would not be arrested and would shoot it out with police) *id.;* (3) there was a clear showing of probable cause (the magistrate's signature on Florida warrants) *United States v. Davis,* 785 F.2d 610 (8th Cir.1986); (4) suspect believed to be in the premises (officers saw Elder enter the house) *People v. Abney,* 81 Ill.2d 159, 41 Ill.Dec. 45, 407 N.E.2d 543 (1980); (5) likelihood of flight (brothers

packing camper) *United States v. Williams,* 612 F.2d 735 (3d Cir.1979); and (6) entry can be peaceable and during daylight hours (officers gave Elder an opportunity to surrender, the only possible entry was telephone contact with Elder, and these events occurred during the day) *United States v. Davis,* 785 F.2d 610 (8th Cir.1986). Based on these factors, the defendants argue that a constructive entry was necessary in order to prevent the potential harming of others inside or outside the premises which was located in a residential area. Memorandum in Opposition to Plaintiffs' Motion for Partial Summary Judgment, filed July 6, 1989, at 18–23; Memorandum in Support of Motion for Summary Judgment, filed August 30, 1990, at 11–12.

(d) *If the court finds that no exigent circumstances existed, then the defendants are still protected by qualified good faith immunity doctrine.* The defendants note that this is an affirmative defense that must be proved by them; however, they note that courts have granted summary judgment on this issue if the pleadings and affidavits indicate that there are no genuine issues of material fact. *Id.* at 12 (*citing Harris v. City of Roseburg,* 664 F.2d 1121, 1129 (9th Cir.1981), and *Kipps v. Ewell,* 538 F.2d 564, 566 (4th Cir.1976)).

According to the defendants, the test for whether or not they are entitled to qualified immunity under the facts is, "[s]hould a reasonable person in the shoes of the individual police officer have known that he was violating another's ... clearly established constitutional rights?" Memorandum in Support of Motion for Summary Judgment, filed August 30, 1990, at 14 (*citing Ngiraingas v. Sanchez,* 858 F.2d 1368, 1374 (9th Cir.1988), *aff'd* — U.S. ——, 110 S.Ct. 1737, 109 L.Ed.2d 163 (1990)). Applying this standard, the defendants claim that Lt. Holloway knew he could not enter the home without a warrant; however, he in good faith believed he could serve the warrants outside the home

---

**1.** Idaho Code § 19–4514 (1987) provides in part: "The arrest of a person may be lawfully made ... without a warrant upon reasonable informa- tion that the accused stands charged with a felony by the courts of another state...."

in public without a valid Idaho warrant. Defendants argue that the law is unclear in Idaho, as to whether there can be a "constructive entry," and therefore, defendants' conduct did not violate clearly established statutory or constitutional law. Memorandum in Support of Motion for Summary Judgment, filed August 30, 1990, at 12–14.

(e) *There is no affirmative link between the alleged violations and the adoption of a policy authorizing the alleged misconduct; therefore, the claims against Ada County and the Sheriff should be dismissed.* Under the law, a municipality cannot be held liable on a respondeat superior theory unless there exists an affirmative link between the violations complained of and the adoption of any plan or policy of the agencies or persons showing authorization or approval of the misconduct. *Monell v. Department of Social Serv. of New York,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978); *Rizzo v. Goode,* 423 U.S. 362, 370, 96 S.Ct. 598, 603–04, 46 L.Ed.2d 561 (1976). The defendants also cited a Sixth Circuit case which, in addressing this standard, stated:

> The result of *Rizzo,* and subsequent cases in the lower federal courts applying the standards it announced is that a failure of a supervisory official to supervise, control, or train the offending individual officers is not actionable absent a showing that the official either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.

*Hays v. Jefferson County, Kentucky,* 668 F.2d 869, 874 (6th Cir.), *cert. denied,* 459 U.S. 833, 103 S.Ct. 75, 74 L.Ed.2d 73 (1982).

Applying this standard, the defendants argue that there is no evidence that Sheriff Killeen's or Ada County's failure to supervise or train their officers caused any injury to the plaintiffs. There is no evidence in the record to indicate that these officials in any manner authorized, approved or knowingly acquiesced in the alleged unconstitutional conduct of the officers making the arrest.[2] Memorandum in Support of Motion for Summary Judgment, filed August 30, 1990, at 17–18.

In addition, the defendants in oral arguments cited the court to *Pembaur v. Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), a United States Supreme Court decision where the court further clarified the defendants' position that Ada County and the Sheriff cannot be found liable under Section 1983 because they did not make a deliberate choice to make public arrests in the manner executed by Lt. Holloway in this case. In *Pembaur,* the Court stated:

> We hold that municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.

*Id.* at 483–84, 106 S.Ct. at 1299–1300.

(f) *Count Four of the Complaint falls within Idaho Code § 6–904, and therefore should be dismissed.* Idaho Code § 6–904[3] provides for governmental immu-

---

**2.** It should be noted that according to Lt. Holloway's deposition, the Sheriff, although present at the scene, did not give any orders or take part in the arrest.

> "Q All right. Now, was the sheriff himself involved—I'm talking Vaughn Killeen—in this incident?
> "A [Lt. Holloway] He was at this incident.
> "Q Okay. What was his role?
> "A He didn't do anything, other than he was there, observed what was happening, and obviously was my supervisor. But as far as giving directions on this situation, he was not involved in it."

Reply Memorandum in Support of Motion for Summary Judgment, filed Oct. 29, 1990, Excerpts of Holloway Deposition at 18.

**3.** Idaho Code § 6–904 (1990) provides in part that:

> A governmental entity and its employees while acting within the course and scope of their employment and without malice or criminal intent shall not be liable for any claim which:
> . . . .
> 3. Arises out of assault, battery, false imprisonment, *false arrest,* malicious prosecu-

nity for false arrests. Defendants' claim that the plaintiffs in Count Four are seeking damages against Ada County and the Sheriff for injuries they sustained as a result of a false arrest, and that pursuant to Section 6–904, these parties are not liable for these claims. They also assert that the plaintiffs cannot seek redress for both a Section 1983 claim and a common law tort claim, because these claims both seek the same relief. Memorandum in Support of Motion for Summary Judgment, filed August 30, 1990, at 18–19.

(g) *The consortium loss claim, Count Five, should also be dismissed as it is wholly derivative of the other claims.* Defendants argue that if the other counts are dismissed, then this count fails as a matter of law as a consortium claim is a derivative claim. *Runcorn v. Shearer Lumber Prod., Inc.,* 107 Idaho 389, 394, 690 P.2d 324, 329 (1984). Defendants also assert that the claim should fail because the plaintiffs were not married at the time Mr. Elder was injured. They were divorced in 1974 and lived with each other off and on through February of 1987. They reject plaintiffs' argument that they had a valid common law marriage, and argue that Florida law does not recognize common law marriages after 1967. Memorandum in Support of Motion for Summary Judgment, filed August 30, 1990, at 19–20.

In their reply brief, defendants assert that Michigan law also does not recognize common law marriages after 1957, so that Idaho would be the only law that the plaintiffs could make this claim under. They argue that a close reading of Beverly Elder's deposition will indicate that no common law marriage existed in Idaho. They claim that in the deposition, Ms. Elder indicates that when they lived in Idaho, they did not live together, nor did they consider themselves married.

## B. *Analysis of Pending Motions*

### 1. The validity of the arrest.

The threshold question that this court must address as it considers these cross-motions for summary judgment is, whether or not it is clearly established in Idaho law that an officer, under the circumstances of this case—where officers surrounded the house, requested the individual to exit the house and that individual complies—must have a valid Idaho arrest warrant in order to arrest that individual. This court finds that there is no clearly established statutory or case law in Idaho or the Ninth Circuit which addresses this issue. It is not disputed among the parties that if the arrest would have actually occurred in the home, then the officers would have had to have a valid Idaho arrest warrant, and possibly a valid Idaho search warrant [4].

The Idaho Supreme Court in *State v. Bradley,* 106 Idaho 358, 679 P.2d 635 (1983), following the law announced by the United States Supreme Court in *Payton v. New York,* 445 U.S. 573, 577, 100 S.Ct. 1371, 1375, 63 L.Ed.2d 639 (1980), found that absent exigent circumstances or consent, officers must have a valid Idaho arrest warrant to enter a defendant's private residence in order to make an arrest, even if the officers have a valid arrest warrant from a sister state. The law in this area, where this is an actual entry into the home, is, therefore, clearly established.

Unfortunately, that is where the clarity ends. The court has found no Idaho or Ninth Circuit law which addresses the issue of whether a valid Idaho arrest warrant is necessary in order to make a "constructive entry" into the home to make an arrest. The court was also unsuccessful in finding any law in Idaho or the Ninth Circuit that addresses the issue of what constitutes a "constructive entry" or "constructive crossing of the threshold."

The plaintiffs cite the court to two cases, *State v. Holeman,* 103 Wash.2d 426, 693

---

tion, abuse of process, libel, slander, misrepresentation.... (emphasis added)

**4.** The search warrant may have been required in that the home that Charles Elder was residing in at the time, the home at which the arrest was made, was the home of his brother, William Elder. The court notes that this issue was not addressed by the parties, and therefore, this court will not review this issue.

P.2d 89 (1985), and *Scroggins v. State,* 276 Ark. 177, 633 S.W.2d 33 (1982), which they claim are persuasive in this area. However, neither of these cases are directly on point, and neither case is from this state or this circuit. In *Holeman,* the officers who executed the arrest reached through the doorway and physically grabbed the individual who was standing in the doorway. The court there held that this was clearly a crossing of the threshold which required an arrest warrant.

In *Scroggins,* the court dealt with the situation in which the officers knocked on the door of the suspects' motel room and when the suspects answered, they pulled their guns and ordered the suspects out of the house. Once the suspects exited the motel, the officers effectuated the arrest. The court does not find *Holeman* and *Scroggins* persuasive as they both are clearly distinguishable from the case at bar. In the case at bar, the officers did not physically cross the threshold to grab Mr. Elder by the arm and pull him out of the house, nor did the officers knock on the door, wait for Mr. Elder to answer, and then pull their guns on him and demand that he come out of the house.

■ The case law in this area clearly supports the view that the significant point of analysis is the threshold, and that if the person is outside his doorway, in an area with public access, then he no longer has the protection of requiring a warrant. *State v. Bradley,* 106 Idaho 358, 679 P.2d 635 (1984); *United States v. Karagozian,* 715 F.Supp. 1160 (D.Conn.1989) (where the court held that a secluded rear deck of a home still has the same privacy expectations as the home because this is not a place, like the driveway, with ready access to visitors, nor was it visible to the public). Based on this analysis, the court finds that once Mr. Elder stepped out of the front door of his brother's house, onto the public access sidewalk of the home, a public arrest was made unless he can show that he did not exit the house voluntarily, or unless he can show that the area where he was arrested was secluded from public access and deserving of the same expectation of

privacy as the home itself. These questions clearly present genuine issues of material facts that prevent this court from entering summary judgment on this issue.

The Eighth Circuit, in *Duncan v. Storie,* 869 F.2d 1100 (8th Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 152, 107 L.Ed.2d 110 (1989), addressed a similar question concerning similar facts. In *Duncan,* the plaintiff brought a Section 1983 claim, alleging unlawful arrest and excessive use of force. The main question in the case was whether a public arrest occurred in the doorway of the plaintiff's house. Because the court found that there existed genuine issues of material fact concerning whether or not a public arrest was made, the court refused to grant summary judgment. The court summed up the law in this area very clearly when it stated:

> Depending upon whether Duncan was arrested in his home or outside in a public place, different standards apply.... If an individual voluntarily left the confines of his home, as Storie and Whitted claim that Duncan did, then the arrest was made in a public place. *United States v. Santana,* 427 U.S. 38, 42, 96 S.Ct. 2406, 2409, 49 L.Ed.2d 300 (1976). Under these circumstances, the individual has no expectations of privacy and the arresting officers need only demonstrate that there was probable cause in order to justify a warrantless arrest.... However, a warrantless arrest that occurs inside an individual's home is unconstitutional unless the officers demonstrate the existence of probable cause and exigent circumstances.

The doorway of an individual's home or apartment or hotel room may be a public place for the purpose of making a warrantless arrest *if the individual has come to stand in the doorway voluntarily. See United States v. Whitten,* 706 F.2d 1000, 1015 (9th Cir.1983). However, an individual who is *compelled* to stand in a doorway cannot be lawfully arrested without the existence of probable cause and exigent circumstances.

*Duncan v. Storie,* 869 F.2d at 1102 (citations and footnote omitted) (emphasis added).

The *Duncan* court emphasized that the focus should not be on the exact location of the individual in relation to the doorway, but instead, the crucial issues are whether the individual had an expectation of privacy, and whether the individual came to the door voluntarily. *Id.* Applying this law, the court, in denying defendant's motion for summary judgment, found that it could not hold as a matter of law, that the individual "voluntarily placed himself in a public place and willingly relinquished the expectation of privacy that he is entitled to when he is within his home." *Id.* at 1103.

Applying this analysis to the facts in this case provides the court with ample grounds to deny plaintiffs' Motion for Partial Summary Judgment, and defendants' Motion for Summary Judgment on the issue of whether the arrest was valid. The court finds that there still are genuine issues of material fact concerning whether Mr. Elder placed himself voluntarily in a public place, and whether he willingly relinquished his expectation of privacy. As noted above, the defendants argue that they did not coerce Mr. Elder out of the home, but instead, that Mr. Elder's brother was the one who talked to Mr. Elder on the phone and police loudspeaker. They further assert that if Mr. Elder would not have come out into the public place voluntarily, *then* they would have obtained an Idaho search and arrest warrant. The court finds that there is ample evidence to support a finding that there still exists genuine issues of material fact on this issue.

### 2. Exigent circumstances.

If this court were to hold that there was a "constructive entry" into the home, and therefore, the defendants had to obtain a valid Idaho arrest warrant, the defendants argue that the warrant requirement would be excused because of the existence of exigent circumstances. As noted above, the defendants cite several factors that Lt. Holloway testified to in his deposition that constitute exigent circumstances. Despite conceding that Mr. Elder was wanted for felony charges in Florida, and that he said he would not be arrested, and that he had access to guns in the house, plaintiffs argue that these factors alone or together do not constitute exigent circumstances. Plaintiffs' Response to Defendants' Memorandum in Support of Motion for Summary Judgment, filed Oct. 19, 1990, at 5–6.

Plaintiffs argue that under *Michigan v. Tyler,* 436 U.S. 499, 509, 98 S.Ct. 1942, 1949–50, 56 L.Ed.2d 486 (1978), the unifying question under the case law for determining whether exigent circumstances exist, is whether or not "there is compelling need for official action and no time to secure a warrant." Plaintiffs assert that the warrantless entry should be upheld only if there was "a 'compelling need' to avoid an imminent risk of danger to life or property, destruction or loss of evidence, or escape of the suspect." Plaintiffs' Response to Defendant's Memorandum in Support of Motion for Summary Judgment, filed on Oct. 19, 1990, at 6–7 (citation omitted).

The plaintiffs assert that the facts indicate that this was not an exigent circumstance because the police had planned the arrest five days before the incident, and that the police themselves created the exigency by surrounding the home and ordering Mr. Elder out of the house. They argue that there was not a compelling need to suspend the warrant requirement because there was not any risk of danger to anyone, there was no risk of evidence being destroyed, and there was no risk of flight. *Id.* at 7–10. These assertions alone clearly create genuine issues of material facts. This court, therefore, finds that whether or not, under these circumstances, exigent circumstances existed to excuse the requirement that officers have a valid Idaho arrest warrant is a question of fact, which prevents this court from entering summary judgment in favor of the defendants on this issue.

### 3. Qualified immunity.

■ This court's analysis on whether or not there was a valid arrest under the circumstances in this case controls the out-

come on the issue of qualified immunity. Plaintiffs, under their Section 1983 claims, argue that they are entitled to recover against the defendants because the defendants violated clearly established constitutional rights, specifically, Mr. Elder's right not to be arrested in his brother's home without a valid Idaho arrest warrant. Defendants assert that even if the court were to find that a valid Idaho arrest warrant was required to make an arrest, and even if the court found that there were no exigent circumstances to justify the warrantless arrest, the court must still find in favor of the defendants because they are protected by the doctrine of qualified good faith immunity. The court is persuaded by defendants' argument.

In *Malley v. Briggs*, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), the Supreme Court, in further defining the qualified immunity standard set forth in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), stated: "Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized." *Malley v. Briggs*, 475 U.S. at 341, 106 S.Ct. at 1096. *See also, Los Angeles Police Protective League v. Gates*, 907 F.2d 879, 887–88 (9th Cir.1990).

In terms of this case, the defendants restate this standard as "whether no reasonable officer could have believed that an Idaho warrant was not required for an arrest upon Bill Elder's front porch." Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment, filed July 6, 1989, at 15. In *Ngiraingas v. Sanchez*, 858 F.2d at 1374, the Ninth Circuit, in adopting the Third Circuit's standard, stated that:

Deciding whether a police officer has acted in good faith is no easy task. As a general matter, however, we note that good faith immunity is judged "by an objective standard, not by examination of the subjective state of mind of the officer." ... *The relevant question is ... "[W]ould or should a reasonable person*

*in the shoes of the individual police officer have known that he was violating another's ... clearly established constitutional rights ..."*?

*Id.* (citation omitted) (emphasis added).

As stated above, the law is clearly established that absent consent or exigent circumstances, officers must obtain a valid arrest warrant prior to crossing the threshold of a home to arrest an individual. *State v. Bradley*, 106 Idaho 358, 679 P.2d 635 (1983); *Payton v. New York*, 445 U.S. 573, 577, 100 S.Ct. 1371, 1375, 63 L.Ed.2d 639 (1980). However, the law is not clear—in fact, the court has found no controlling Idaho or Ninth Circuit case law—on the issue of "constructive crossing of the threshold." The law is uncertain as to what even constitutes a "constructive crossing." These questions appear to be questions of fact, that must be dealt with on a case-by-case basis. There is certainly no statutory or case law that provides that a constructive crossing of the threshold occurs when the officers surround the house, and then attempt to make contact with the individual in the home.

Therefore, the defendants in this case could not have been violating plaintiff's clearly established rights when the law was far from certain as to when a constructive entry occurs, and there exists no official policy relating to getting a suspect out of his home by telephone or police loudspeaker. There is no way that any individual officer, under the circumstances of this case, could have known that he was violating another's clearly established constitutional rights when those rights were not yet clearly established. Until the law is better defined, it appears to this court that officers in similar circumstances could make an arrest outside the home if they in good faith believed that they could effectuate the arrest without violating any clearly established constitutional rights. The officers in this case clearly acted reasonably under the circumstances as it was their understanding of the law, and it was provided for in Ada County's arrest and custo-

dy policy [5], that as long as they made the arrest outside the home, they could make the arrest without an Idaho arrest warrant. It appears from the record that the officers reasonably believed that their actions were constitutional; therefore, no liability attaches to their actions.

### 4. Application of summary judgment standard.

In *Harris v. City of Roseburg*, 664 F.2d 1121 (9th Cir.1981), the Ninth Circuit, in addressing the doctrine of qualified good faith immunity, has stated that even though this defense is an affirmative defense that must be proved by the police officers, summary judgment is still appropriate if the pleadings and affidavits indicate that there are no genuine issues of material fact. In affirming the district court's granting of summary judgment in favor of the police officers, the court stated:

> "The non-movant has an affirmative duty to come forward to meet a properly supported motion for summary judgment...." [W]e find that the affidavits and depositions set forth facts, which, if accepted, would entitle Bergman [the officer] to summary judgment. With respect to Bergman's good faith defense, plaintiff has not raised any triable issues of fact as to whether Bergman reasonably believed that his actions were proper.

*Id.* at 1129–30 (citation omitted).

It is well settled that a party in defending against a motion for summary judgment may not simply rest upon the bare pleadings.[6] As the Ninth Circuit stated in *United States v. Allen*, 578 F.2d 236 (9th Cir.1978): "In order successfully to oppose a motion for summary judgment, a party

may not rely solely on conclusory allegations in the pleadings ... but must, instead, offer some evidence at least outlining a factual dispute." *Id.* at 237 (citations omitted).

Moreover, under Rule 56, it is clear that an issue in order to preclude entry of summary judgment must be *both* "material" and "genuine." An issue is "material" if it affects the outcome of the litigation. An issue, before it may be considered "genuine," must be established by "sufficient evidence supporting the claimed factual dispute ... to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975) (*quoting First Nat'l Bank of Arizona v. Cities Serv. Co., Inc.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968)). The Ninth Circuit cases are in accord. *See e.g., British Motor Car Distrib., Ltd. v. San Francisco Automotive Indus. Welfare Fund*, 882 F.2d 371 (9th Cir.1989).

According to the Ninth Circuit, in order to withstand a motion for summary judgment, a party

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

*Id.* at 374 (citation omitted).

The court finds that on the issue of whether the officers acted in good faith when they arrested Mr. Elder without a warrant outside his brother's home, the

---

**5.** *See* Exhibit D attached to Plaintiffs' Response to Defendants' Memorandum in Support of Motion for Summary Judgment, filed October 19, 1990, which is a copy of Ada County's "arrest and custody" policy that was in effect at the time of the arrest.

**6.** *See also* Fed.R.Civ.P. 56(e), which provides in part:

"When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere

allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is an genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."

U.S.C.S. Rules of Civil Procedure, Rule 56(e) (Law. Co-op. 1987 & Supp.1990).

plaintiffs have failed to raise any triable issues of fact as to whether Lt. Holloway believed that his actions were proper.

### C. Conclusion

Based on the foregoing analysis, the applicable standards under Rule 56, and the direction given by the Ninth Circuit in considering these issues, the court finds under the doctrine of qualified good-faith immunity, the defendants are entitled to summary judgment. Because all the other claims asserted by the plaintiffs are derivative of the claims against the officers—that is, without a finding that the officers had violated plaintiffs' rights, the plaintiffs could not prevail on their other claims—the court finds that Ada County and Sheriff Vaughn Killeen are also entitled to summary judgment. The plaintiffs have failed to offer any evidence of an official policy of Ada County or the Sheriff's Department, which would make them liable under Section 1983. Plaintiffs' claim for loss of consortium must also fail as a matter of law, as this claim is wholly contingent upon plaintiffs' success on the underlying tort claims. *Runcorn v. Shearer Lumber Prod., Inc.,* 107 Idaho 389, 394, 690 P.2d 324, 329 (1984).

### III. ORDER

Based on the foregoing and the court being fully advised in the premises,

IT IS HEREBY ORDERED that plaintiffs' Motion for Partial Summary Judgment, should be and hereby is, DENIED in its entirety.

IT IF FURTHER ORDERED that defendants' Motion for Summary Judgment, should be and hereby is, GRANTED.