951 F.2d 1112
 21 Fed.R.Serv.3d 637
 Charles K. ELDER; Beverly S. Elder, husband and wife,
Plaintiffs-Appellants,
v.
R.D. HOLLOWAY; Other Unknown Employees and/or Agents,
individually and in their official capacity as
police officers for the Ada County
Sheriff's Office, et al.,
Defendants-Appellees.
 No. 91-35146.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 8, 1991.
Decided Dec. 19, 1991.
 
 John Charles Lynn, Lynn, Scott & Hackney, Boise, Idaho, for plaintiffs-appellants.
 James J. Davis, Davis, Wright & Tremaine, Boise, Idaho, for defendants-appellees.
 Appeal from the United States District Court for the District of Idaho.
 Before WALLACE, Chief Judge, HUG, and RYMER, Circuit Judges.
 RYMER, Circuit Judge:
 
 
 1
 This appeal raises an unusual question: whether a summary judgment on qualified immunity in favor of a law enforcement officer which was properly granted on the record presented to the district court, should nevertheless be reversed because there are legal authorities that plaintiff did not present to the district court or to us on appeal which suggest that, contrary to what the district court found, the law was clearly established at the time of the incident. Because the plaintiff bears the burden of proof on the issue, 751 F.Supp. 858. we affirm.
 
 
 2
 After receiving word that Charles Elder, who was wanted on Florida warrants and considered dangerous, was in town, officer R.D. Holloway and others in the Ada County Sheriff's Office made plans to arrest him outside his place of work. Elder and his brother William got wind of the officers' plans, however, left work early, and returned to William's house (where Elder was living, too). Holloway and a number of other officers set up surveillance at the house. When William tried to ride away on horseback, he was detained. Officers found out that Elder had access to weapons in the house. Eventually, Holloway and William made telephone contact with Elder, who meanwhile had suffered two epileptic seizures. Holloway advised him that if he was unable to walk out of the house, he should crawl. Elder walked out a few minutes later, but fell face down, hitting his head and sustaining severe injuries. This happened on April 27, 1987.
 
 
 3
 Elder's 42 U.S.C. § 1983 action claims these events violated his constitutional right not to be arrested in his home without a valid Idaho warrant. Holloway's motion for summary judgment on the ground of qualified immunity was granted because the court found no Idaho or Ninth Circuit law that addressed the issue of whether a valid Idaho warrant was necessary to make a "constructive entry" into a home to arrest an occupant.
 
 
 4
 As the trial judge's memorandum opinion and order notes, Elder cited two cases to the court, State v. Holeman, 103 Wash.2d 426, 693 P.2d 89 (1985), and Scroggins v. State, 276 Ark. 177, 633 S.W.2d 33 (1982). Based on these cases and its reading of Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), the district court concluded that the law was not clear on the issue of "constructive crossing of the threshold." Accordingly, it ruled in Holloway's favor on qualified immunity.
 
 
 5
 We have no difficulty with the district court's decision on the record it was presented. Neither case Elder relied upon clearly established whether an arrest takes place inside or outside the home, when the suspect is inside but is summoned outside by law enforcement officers who have surrounded the premises.
 
 
 6
 There was, however, Ninth Circuit authority, long in place, which is closely on point and could make a difference in the outcome of this case. In United States v. Al-Azzawy, 784 F.2d 890 (9th Cir.1985), cert. denied, 476 U.S. 1144, 106 S.Ct. 2255, 90 L.Ed.2d 700 (1986), police surrounded the suspect's house and, with weapons drawn, ordered him to leave. When he emerged, he was taken into custody. We held that, even though he had exited the house and was physically seized outside, he "was arrested inside his residence without a warrant." Id. at 893. In so holding, we reaffirmed the rule that " 'it is the location of the arrested person, and not the arresting agents, that determines whether an arrest occurs within a home.' " Id. (quoting United States v. Johnson, 626 F.2d 753, 757 (9th Cir.1980), aff'd on other grounds, 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982)). The Sixth Circuit had also held to the same effect in United States v. Morgan, 743 F.2d 1158, 1166-67 (6th Cir.1984), cert. denied, 471 U.S. 1061, 105 S.Ct. 2126, 85 L.Ed.2d 490 (1985).[1] Thus, that principle was clearly established at the time of Elder's arrest.[2]
 
 
 7
 The problem, of course, is that none of these cases were called to the attention of the district court. The question, therefore, is whether we should now reverse. We conclude that we should not, for the following reasons.
 
 
 8
 First, we have said that a § 1983 plaintiff bears the burden of showing that the constitutional right purportedly violated was clearly established at the time of the official's conduct. Baker v. Racansky, 887 F.2d 183, 186 (9th Cir.1989). Although the state of the law at the time the incident occurred is a question for the court, rather than a jury, to decide, in the unique context of qualified immunity it is akin to a question of fact. What the law was is inextricably intertwined with the merits of the issue, such that a court cannot properly resolve a police officer's motion for summary judgment without determining whether, on the one hand, the law was clearly established and, on the other, whether the law enforcement official would reasonably have known he was violating the plaintiff's constitutional rights by his conduct on the particular occasion. Unless the plaintiff presents legal authorities that bear on the point, he fails to carry his burden.
 
 
 9
 Second, it goes without repeating that we never consider facts not presented to the district court. United States v. Elias, 921 F.2d 870, 874 (9th Cir.1990). By the same token, we normally do not consider legal issues not raised or ruled upon in the district court. Examples include those matters that can be urged by way of a Rule 12 motion that are waived unless made with the answer, see, e.g., Fed.R.Civ.P. 12(h)(1) (defenses of lack of personal jurisdiction, improper venue, insufficiency of process, and insufficiency of service of process waived if omitted from pre-answer motion, if any, or answer); Benny v. Pipes, 799 F.2d 489, 492 (9th Cir.1986) (A "general appearance or responsive pleading by a defendant that fails to dispute personal jurisdiction will waive any defect in service or personal jurisdiction."), amended on other grounds, 807 F.2d 1514 (9th Cir.), cert. denied, 484 U.S. 870, 108 S.Ct. 198, 98 L.Ed.2d 149 (1987); Chilicky v. Schweiker, 796 F.2d 1131, 1135-36 (9th Cir.1986) (if party files pre-answer motion but fails to raise defense of lack of personal jurisdiction in that motion, defense is waived), rev'd on other grounds, 487 U.S. 412, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988); issues that could have been joined by a motion for directed verdict, but cannot be pressed on appeal unless that motion is made, see, e.g., Gilchrist v. Jim Slemons Imports, Inc., 803 F.2d 1488, 1493 (9th Cir.1986) (sufficiency of evidence not reviewable on appeal unless motion for directed verdict was made in trial court); United States v. 33.5 Acres of Land, 789 F.2d 1396, 1400 (9th Cir.1986) (same, but noting limited exception for plain error resulting in manifest miscarriage of justice); and errors in instructions that are waived unless an objection is timely made or instructions reflecting contrary law are submitted before the jury goes out, see e.g., Fed.R.Civ.P. 51 (no party can challenge jury instructions on appeal unless objection made before jury retires); Hammer v. Gross, 932 F.2d 842, 847-48 (9th Cir.) (en banc) (party cannot challenge jury instructions on appeal if not objected to in district court prior to jury retiring; there is no plain error exception to this rule), cert. denied, --- U.S. ----, 112 S.Ct. 582, 116 L.Ed.2d 607 (1991). Furthermore, the relevant record on review of summary judgments is the record as it existed at the time the motion was considered. Harkins Amusement Enter., Inc. v. General Cinema Corp., 850 F.2d 477, 482 (9th Cir.1988), cert. denied, 488 U.S. 1019, 109 S.Ct. 817, 102 L.Ed.2d 806 (1989). We see no meaningful distinction between these procedures and this one.
 
 
 10
 Third, for us to reverse on account of law that could and should have been known to counsel at the time the summary judgment motion was under consideration would violate the spirit of the first rule of the Federal Rules of Civil Procedure. Rule 1 mandates that the rules "be construed to secure the just, speedy, and inexpensive determination of every action." This includes Rule 56 on summary judgments. In this case, a summary judgment was entered that is arguably erroneous because the person with the burden to do so, failed to find or produce relevant Ninth Circuit authority. Had he done so at the right time and in the right forum, the adverse judgment might have been avoided. So, too, would this appeal. In these circumstances, failing to hold Elder to the case he chose to present would fly in the face of Rule 1.
 
 
 11
 Fourth, given the hybrid nature of the issue, and the fact that the plaintiff has the burden of showing that the law was clearly established, for us to step in now would have the effect of putting the court on counsel's legal staff. We have great concern that this does not comport with our overriding obligation to be fair and impartial to all sides. More significantly, to reverse because of legal authority not called to the attention of the district court, when the state of the law is the heart of the qualified immunity issue on summary judgment, would necessarily mean that we expect the district court to research independently the applicable law whenever qualified immunity is at issue. While to do so is commendable and encouraged, we are reluctant to require it at the cost of reversible error, at least when the error is not so obvious or fundamental as to result in a denial of due process. To impose this burden on a district judge would put him or her back in the business of practicing law, and to that extent implicates the court's impartiality. Cf. Jacobsen v. Filler, 790 F.2d 1362, 1365 n. 7 (9th Cir.1986). It would also shift to the court the burden we have put on the plaintiff. That we are bound not to do. Pratt v. McCarthy, 850 F.2d 590, 593 (9th Cir.1988) (only en banc court has power to reject circuit precedent).
 
 
 12
 Finally, in this case we cannot say that injustice has occurred. Neither counsel nor the court found Al-Azzawy. We are hard pressed to conclude that, given that failure, the law was sufficiently clear that a reasonable law enforcement officer in Holloway's shoes would understand that what he was doing violated a constitutional right.
 
 
 13
 AFFIRMED.
 
 
 
 [1]
 The Eighth Circuit is now in accord, see Duncan v. Storie, 869 F.2d 1100 (8th Cir.), cert. denied, 493 U.S. 852, 110 S.Ct. 152, 107 L.Ed.2d 110 (1989). However, Duncan was handed down after the incident at issue in this case. Therefore, it is not relevant on the question of Holloway's good faith belief, and Elder's reliance on it on appeal is inappropriate
 
 
 [2]
 Al-Azzawy went on to hold that exigent circumstances justified the warrantless arrest. 784 F.2d at 894. Holloway urges that no matter what, this renders the law uncertain. Given our disposition, it is not necessary to resolve this question